**Jose BARAJAS, Appellant,**

v.

**The STATE of Texas.**

**No. 415–99.**

Court of Criminal Appeals of Texas, En Banc.

June 26, 2002.

Charles Louis Roberts, El Paso, for Appellant.

John L. Davis, Assistant District Attorney, El Paso, Matthew Paul, State's Attorney, Austin, for State.

PRICE, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., join.

During voir dire in the appellant's indecency with a child trial, his attorney tried to ask venire members if they could be fair and impartial in a case in which the victim was nine years old. The trial court did not permit the question. We granted review to determine whether the trial court abused its discretion. We conclude that it did not because the question was too vague to constitute a proper question.

The appellant was indicted for two counts of indecency with a child. Tex. Penal Code § 22.11(a). At the time of the offense, the victim was nine years old. During voir dire, the trial judge denied

defense counsel's request to ask whether the venire members could be impartial in an indecency case involving a victim who was eight to ten years old or, in the alternative, a victim who was nine years old. Defense counsel also requested and was not permitted to ask whether the venire members could consider probation in a case involving a victim who was eight to ten years old.[1] The jury found the appellant guilty and assessed punishment at ten years, probated.

On direct appeal, the appellant claimed that the trial court abused its discretion by disallowing his proffered questions. The appellant alleged that this error impaired the ability of his counsel to intelligently exercise his peremptory and for-cause challenges during jury selection.

The Court of Appeals, relying on *Nunfio v. State*, 808 S.W.2d 482, 485 (Tex.Crim. App.1991), *overruled on other grounds in, Gonzales v. State*, 994 S.W.2d 170, 172 (Tex.Crim.App.1999),[2] determined that the refusal to allow the appellant to ask voir dire questions regarding the victim's age was constitutional error. *Barajas v. State*, No. 08–97–00405–CR (Tex.App.-El Paso, Feb. 4, 1999) (not designated for publication). The Court of Appeals held that the error was one that defied a meaningful harm analysis, reversed the conviction, and

remanded the case for a new trial. *Id.*, slip op. at 5–6.

We granted the State's petition for discretionary review to determine whether the question was proper and whether the Court of Appeals performed a proper harm analysis.[3]

### I. Legal Background

■■■ The trial court has broad discretion over the process of selecting a jury. *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim.App.1988). The main reason for this is that voir dire could go on forever without reasonable limits. *Faulder v. State*, 745 S.W.2d 327, 334 (Tex.Crim.App.1987). We leave to the trial court's discretion the propriety of a particular question and the trial court's discretion will not be disturbed absent an abuse of discretion. *Allridge*, 762 S.W.2d at 163; *Faulder*, 745 S.W.2d at 334. A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited. *Allridge*, 762 S.W.2d at 163.

■■■ A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985). An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts. *Standefer v. State*, 59

---

1. We held in *Standefer v. State*, 59 S.W.3d 177, 181 (Tex.Crim.App.2001), that the parties may not ask whether venire members can consider probation under the particular facts of the case beyond the offense as charged in the indictment.

2. The Court of Appeals directly relied on *Cena v. State*, 960 S.W.2d 804 (Tex.App.-El Paso 1997), *vacated on other grounds*, 991 S.W.2d 283 (Tex.Crim.App.1999), which relied on our opinion in *Nunfio*.

3. The exact grounds on which we granted review are:

(1) When a defendant is allowed the opportunity to ask offense-specific voir dire questions, namely, whether the jury panel could consider probation and be fair in an indecency with a child case where the victim is under age seventeen, does a trial court abuse its discretion in not allowing age-specific questions, namely, whether the jury could be fair and impartial and consider probation where the victim is eight-to-ten years old?
(2) Does a court of appeals err in reversing for jury voir dire error without performing a harm analysis?

S.W.3d 177, 181 (Tex.Crim.App.2001). In addition, a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prevented by the trial judge. *Smith,* 703 S.W.2d at 645.

■ One way a question can be relevant is if it seeks to uncover grounds for a challenge for cause. A venire member may be challenged for cause if: (1) he possesses a bias or prejudice in favor of or against the defendant, Tex.Code Crim. Proc. art. 35.16(a)(9); (2) he possesses a bias against a phase of the law upon which the State or the defendant is entitled to rely, Tex.Code Crim. Proc. art. 35.16(b)(3) & (c)(2); or (3) he has already decided the defendant's guilt or punishment, Tex.Code Crim. Proc. art. 35.16(a)(10).

We have also held questions to be proper for the purpose of intelligently exercising peremptory challenges. *See, e.g., Hernandez v. State,* 508 S.W.2d 853, 854 (Tex. Crim.App.1974). Reliance on this basis provides no meaningful limit on questions to be asked for the intelligent use of peremptory challenges. The more intelligent or effective the question, the more likely it is that the question will commit the venire member to decide the case, or to refrain from deciding the case, on a basis not required by law.

■ For example, the most effective question would be "under the evidence that will be introduced in this case, would you convict the defendant?" Obviously, neither the State nor the defendant should be able to ask such a question. But the notion that *any* question is proper for the intelligent exercise of peremptory challenges means that the parties could ask such a question. Therefore, questions that are not clearly improper on some other basis may be asked for purposes of intelligently exercising peremptory challenges subject to reasonable time limits imposed by the trial court. *See Ratliff v. State,* 690 S.W.2d 597, 600 (Tex.Crim.App.1985).

## II. Relevant Question

We cannot be certain to what issue in the case the appellant's question was relevant. We can conceive of at least three objects of the question counsel wanted to ask: (1) whether venire members use the victim's age for an improper purpose during the guilt phase, (2) whether venire members use the victim's age in determining credibility of the victim-witness, and (3) whether venire members will use the victim's age in assessing punishment if the appellant is found guilty. We will address each of these potential objects.

### A. Determining Guilt

■ The appellant may have wanted to determine whether venire members would consider the victim's age during the guilt phase of the trial. The victim's age is not a fact of consequence that tends to prove or disprove the appellant's guilt, except that, in this case, the State had to prove that the victim was under the age of seventeen. Tex. Penal Code § 22.11(a). If a venire member stated that she would resolve the appellant's guilt on the basis of the victim's age, that venire member would be challengeable for cause. But that is not the question that the appellant asked. The trial court may, within its discretion, require that parties phrase questions in a way that is precise enough to glean relevant information from the venire member's answer.

### B. Credibility

■ The appellant may have wanted to see whether venire members would decide the victim-witness's credibility on the basis of her age. In his brief, the appellant states that this is why he wanted to ask

the question. Trial counsel in *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App. 1974), had a similar purpose when he requested to ask whether any venire members could not believe that a police officer would lie. *Hernandez*, 508 S.W.2d at 854. We concluded that the question was a proper one and in a proper form because the defendant was not seeking to commit the venire to a conclusion based on a given set of facts. But in that case, the question was precise; the appellant asked a question that focused the venire members' attention on a relevant issue. Again, we think that the trial court does not abuse its discretion when it requires parties to phrase their questions to glean relevant information.

## C. Assessing Punishment

██ The age of a victim is a permissible consideration during the punishment phase. The jury need not decide or refrain from assessing the appellant's punishment on the basis of the age of the victim. *See* Tex.Code Crim. Proc. art. 37.07 § 3(a)(1). If the appellant's aim was to determine whether venire members would consider the victim's age in assessing punishment, it was an improper pursuit. The appellant may not seek to commit venire members to assess or refrain from assessing punishment on this basis. *Standefer*, 59 S.W.3d at 181.

Our conclusion today that the appellant's question was improper conflicts with our holding in *Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim.App.1991), on which the Court of Appeals and the appellant rely. We will, therefore, address whether we should continue to observe the rule in *Nunfio*.

## III. *Nunfio*

██ In *Nunfio*, we held that the question "can you be fair and impartial if the victim in this case is a nun?" was a proper question and the trial court erred to prohibit Nunfio's asking the question. In support of this holding we said:

> [T]he question posed by appellant's counsel sought to determine potential bias or prejudice in favor of the victim by virtue of her vocation. Similar inquiries have been held to be proper. The question in this case was proper and, thus, error is shown.

*Nunfio*, 808 S.W.2d at 484–85 (citations omitted). We may overrule a prior case when the case was badly reasoned or is unworkable. *Proctor v. State*, 967 S.W.2d 840, 845 (Tex.Crim.App.1998). The holding in *Nunfio* meets both criteria, and therefore, we overrule it.

## A. Reasoning

*Nunfio*'s holding was based on our conclusion that the question was similar to questions in other cases that we had held to be proper. The cases we cited were *Abron v. State*, 523 S.W.2d 405 (Tex.Crim. App.1975), and *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App.1974).

In *Abron*, we held that the trial court abused its discretion in prohibiting the defendant from asking the venire members whether they would be biased because the defendant was a black man and the victim a white woman. *Abron*, 523 S.W.2d at 407. We explained that this prohibition may have violated the Due Process Clause of the Fourteenth Amendment but definitely denied Abron the right to intelligently exercise his peremptory challenges.

In that case, the appellant attempted to ask a very specific question: whether the venire members would be biased against Abron because of his race and that of the victim. The question was precisely tailored to get to the heart of an issue relevant to the case. *Abron* does not support our holding in *Nunfio*.

In *Hernandez,* we held that the defendant should have been allowed to ask whether venire members could not believe that a police officer would lie. *Hernandez,* 508 S.W.2d at 854. We concluded that the question was a proper one and in a proper form because the defendant was not seeking to commit the venire to a conclusion based on a given set of facts. Once again, the question was specific and tailored to get to an issue relevant to the case. *Hernandez* does not support our holding in *Nunfio.*

The question in *Nunfio* was different from the questions in *Abron* and *Hernandez* because it was not narrowly tailored to an issue relevant to the case; these cases do not provide authority for the holding in *Nunfio* that parties may ask whether a venire member can be impartial under a particular set of facts.

### B. Unworkable Standard

Nunfio's holding provides no reasonable limitation on the parties' ability to ask questions. The question "can you be fair and impartial under a given set of facts?" can be repeated to include every fact in a given case. This "fair and impartial" question is a license to go fishing, without providing any concrete information for the intelligent use of peremptory or for-cause challenges.[4] We have held that counsel may not conduct fishing expeditions during voir dire.

In *Boyd v. State,* 811 S.W.2d 105, 119 (Tex.Crim.App.1991) counsel inquired, "What I'm basically asking you is what you as layman think is a case that is proper for the death penalty to be imposed?" Counsel stated that he was eliciting "what factors [the veniremember] thinks ... would be things that would influence him in voting his verdict." *Id.* at 120. We held that

"a vague question about 'what things' the veniremember thought were important in determining whether an individual should receive a death sentence, wholly unrelated to the sentencing scheme, amounts to a fishing expedition going beyond the scope of proper voir dire." *Ibid.* We concluded the question was improperly broad and the trial court did not abuse its discretion in disallowing it. *Ibid.*

In *Smith v. State,* 703 S.W.2d 641, 645 (Tex.Crim.App.1985), the trial court did not permit the defendant to ask venire members what "their thoughts" were on the insanity defense. We held this inquiry was so broad that it was a global fishing expedition. *Ibid.* It did not "seek particular information from a particular panel member; rather, it present[ed] a general topic for discussion." *Ibid.*

More recently and in another context, we elaborated on the need for counsel to ask specific questions. In *Gonzales v. State,* 3 S.W.3d 915, 917 (Tex.Crim.App. 1999), we addressed the issue of jurors withholding information during voir dire. We held that the defendant failed to show a juror had withheld information because defense counsel's questions had been inadequate. We said "defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial, truthful, and the like." *Ibid.* We emphasized that "[c]ounsel must ask specific questions, not rely on broad ones," and that "counsel must ask follow-up questions." *Ibid.*

■ The question in *Nunfio* and the question in this case are like the questions in *Boyd, Smith,* and *Gonzales.* These questions constitute global fishing expedi-

---

4. We address the applicability to peremptory challenges because the appellant makes the argument that the question goes to the intelligent use of his peremptory challenges.

tions, and trial courts are within their discretion to prevent the questions.

## IV.   Conclusion

The trial court errs to prevent a party's asking proper questions, but the questions sought to be asked by the appellant in this case were not proper.   The trial court is within its discretion to prevent fishing expeditions during voir dire that may extend jury selection *ad infinitum*.   The trial court did not abuse its discretion.

The judgment of the Court of Appeals is vacated, and the case is remanded to that Court for review of the appellant's remaining points of error.[5]

WOMACK, J., filed a concurring opinion, in which KELLER, P.J., and COCHRAN, J., joined.

JOHNSON, J., concurs.

MEYERS, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

WOMACK, J., filed a concurring opinion, in which KELLER, P.J., and COCHRAN, J., joined.

In overruling *Nunfio v. State,* ' 808 S.W.2d 482 (Tex.Cr.App.1991), the Court discusses the two cases on which the *Nunfio* Court relied: *Abron v. State,* 523 S.W.2d 405 (Tex.Cr.App.1975), and *Hernandez v. State,* 508 S.W.2d 853 (Tex.Cr.App.1974).   I agree with the Court's analysis of *Abron* and the Due Process Clause, *ante* at 40.   It may be added that the prohibition of discrimination on the basis of race that is embodied in the Due Process Clause is part of "the law applicable

to the case upon which the defense is entitled to rely," Code of Criminal Procedure article 35.16(c)(2).   Therefore the questions about racial prejudice in *Abron* were relevant to a challenge for cause that a juror was disqualified.   This distinguishes the voir-dire question in *Nunfio* from that in *Abron.*

The same is true of the question in the 1974 *Hernandez* decision, which may be called "*Hernandez* I."   It is true that the Court in *Hernandez* I evaluated the question for its ability to inform a peremptory challenge.   But after the retrial of Hernandez, we held in "*Hernandez* II," 563 S.W.2d 947, 950 (Tex.Cr.App.1978), that the juror's "responses [to the same question] effectively demonstrated bias against the appellant."   The answer to the question showed that the juror was disqualified under Code of Criminal Procedure article 36.16(a)(9) ("That he has a bias or prejudice in favor of or against the defendant").[*]   Here again the *Nunfio* Court relied on a case involving a question that was relevant to a challenge for cause.

The *Nunfio* question had no such relevance to the jurors' qualifications.   To characterize such questions as "proper," so that the trial court has no discretion to disallow them, makes it impossible for courts to limit voir dire to its central purpose: the qualification of the jury.

The right "to be heard by counsel" in the Texas Constitution (article I, section 10) may include the right to have counsel address the venire members individually. But it is a different issue whether there is a right for counsel to ask questions that

---

5.   Because of our disposition of the State's first ground for review, we need not reach the second ground for review.

* The question was relevant to other grounds of disqualification as well, such as that "there is established in the mind of the juror such a

conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict," Tex.Code Crim. Proc art. 35.16(a)(10).   The juror twice specifically admitted having such a conclusion.   *See* 563 S.W.2d at 949.

are not relevant to the juror's qualifications.

The leading case for a right to ask questions that only inform the exercise of peremptory challenges is *Houston & Texas Central Ry. v. Terrell*, 69 Tex. 650, 7 S.W. 670 (1888). In that personal-injury case the trial court sustained objections to questions of whether the jurors "knew anything about the facts of the case" or "had made up their minds about the case." *Id.* at 652, 7 S.W. at 670–71. The Supreme Court held that jurors who had prejudged the case were disqualified under the relevant statute. *Id.* at 653–54, 7 S.W. at 671–72. Therefore it was error to disallow questions that went to that ground of disqualification.

Before so holding, the court observed in dicta (*id.* at 653, 7 S.W. at 671):

> The question then recurs, did the defendant have the right to demand that the jurors should answer the questions propounded? We think it had the right. In the first place, it was entitled to six peremptory challenges; and, if for no other reason, counsel should have been allowed to ask the questions in order that he might judiciously exercise this right. It must frequently occur that neither the party nor his counsel knows the jurors, and has no means of ascertaining their antecedents, surroundings, and feelings, except by an examination on their voir dire. The doctrine that the examination should be allowed in order to the intelligent exercise of the right of challenge, is pointedly held by the supreme court of Missouri in the case of *State v. Mann*, 83 Mo. 589, in an opinion well supported by the authorities which are there discussed.

This Court did the same thing in *Barnes v. State*, 88 S.W. 805 (Tex.Cr.App.1905), a decision that was not officially reported. Barnes, accused of violating the local-op-

tion liquor law, was tried before a jury comprising men who either had served on the jury that convicted him of essentially the same charge the day before, or who had stayed in the courtroom to hear the evidence in that trial. At the second trial he was not allowed to ask the veniremen whether they had a fixed opinion if the case presented similar facts. We said, "If the proof showed the two cases arose out of the same transaction or exactly similar transaction and the facts were the same, it occurs to us that it would be a cause of challenge." *Id.* at 807. We had so held in the leading case of *Shannon v. State*, 34 Tex.Crim. 5, 28 S.W. 540 (1894). *Accord, Gilmore v. State*, 37 Tex.Crim. 81, 38 S.W. 787 (1897).

The *Barnes* Court then added (*ibid.*):

> But even conceding that it would not be [a cause of challenge], still appellant had the right to question the juror upon the matter inquired about, in order that he might intelligently exercise his right of peremptory challenge. *Gilmore v. State*, 37 Tex.Cr.R. 81, 38 S.W. 787. The record does not show that either of said jurors served on the jury on the trial of this case, or even that appellant exhausted his peremptory challenges; but we know that he had but three peremptory challenges, and there were nine of these jurors subject to this objection. Evidently some of them must have sat upon the jury. On the full investigation of the matter, it might have appeared that the jurors were not at all disqualified; that the cases arose out of different transactions, and in their essential features were not similar. But the inquiry, as stated before, should have been permitted.

The citation of the *Gilmore* case was inappropriate to this discussion. That case was about challenges for cause, and it had

nothing to do with the exercise of peremptory challenges.

More important is the obviously fallacious reasoning in this paragraph. The Court said that, even if the jurors were not disqualified because of the evidence they heard in the previous trial, the questions were justified for their value in exercising peremptory challenges. But the questions were *relevant* to the jurors' qualifications even if the answers would not have *proved* they were disqualified. They were proper because they went to the jurors' qualifications. There was no reason to consider whether the questions had as an independent justification that they could inform the exercise of peremptory challenges. In this fashion did *Barnes* introduce the notion that in a criminal case it could be error to deny a question that was relevant to a peremptory challenge, but not a cause of challenge—although the issue was not in the case.

From the *dicta* in *Houston & Texas Central* and the illogical statement in *Barnes* has grown the doctrine of a right to ask questions to intelligently exercise peremptory challenges. That the doctrine rests on *dicta* and fallacy may not be a sufficient justification to abandon it, and I do not say that it is sufficient.

More important is the failure of the courts to consider the differences between the right to a qualified jury and the right to eliminate unfavorable jurors. "[A] defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified." *Jones v. State*, 982 S.W.2d 386, 393 (Tex.Cr.App. 1998). The requirements of jurors' qualifications are in part constitutional and in part statutory. Article 35.16 presents an exclusive list of grounds for disqualification. *Butler v. State*, 830 S.W.2d 125 (Tex. Cr.App.1992). Questioning about these grounds is essential to attaining a qualified jury.

The statutory provision of peremptory challenges provides a method of obtaining a more favorable jury, but it does not include a procedure of asking questions to implement the use of the challenges. There is no right to a favorable jury. That is why our law does not permit a party to get a prospective juror's commitment to decide an issue of fact or punishment. I would say that, similarly, there is no right to ask a juror about his views or sentiments on particular issues of fact or punishment. When the *Houston & Texas Central* and *Barnes* courts shifted from one right to another without considering their differences, they seemed to assume that they were equal, but they did not consider whether or why that should be so.

Another problem with the right to ask peremptory-challenge questions is that the doctrine has an inherent flaw that makes it impossible to implement. Such a doctrine cannot co-exist with the doctrine that it is improper to ask a jury to commit to render a particular decision on particular evidence. As the Court points out, *ante* at 39, the closer a question comes to violating the latter doctrine, the more valuable it is in intelligently exercising peremptory challenges. It is literally impossible to apply these doctrines in a rational and predictable way.

Since the doctrine was established, courts have adopted juror questionnaires that provide the parties with personal information about the members of the venire. (In 1999 the legislature enacted a statute to require that all courts use a standard questionnaire that requires jurors to provide personal information. *See* Government Code section 62.0132.) The questionnaires elicit information about a venire member's name, sex, race, age, residence and mailing addresses, education

level, occupation, place of employment, marital status, and a spouse's employment information. *See id.* The model form that was developed as the statute required also elicits information about telephone numbers and previous jury service. Thus the parties can obtain some information for the intelligent exercise of peremptory challenges without asking questions.

Given the inadequate jurisprudential basis for this doctrine, its irreconcilable conflict with another doctrine, the impossibility of its predictable application, the effect it has in unduly lengthening the process of jury selection, and the development of alternate sources of information, I would renounce it. From the jury questionnaires, the observation of the venire members, and the extensive questioning by counsel on causes for challenge that already characterizes our practice, the parties have a great deal of information to exercise their peremptory challenges intelligently. There is no need or justification for a right to ask other questions. I would hold that it is not error for a trial court to prevent counsel from asking questions that are irrelevant to a challenge for cause.

MEYERS, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

### *OPINION*

In an act of judicial inconsistency, the majority needlessly overrules an unpublished opinion of the El Paso Court of Appeals, all the while invalidating workable, ten-year-old precedent of this Court. The majority holds that the question in this case was too vague and imprecise to be proper. This, despite the fact that the weight of our jurisprudence in the arena of voir dire has almost without exception focused on whether or not a question contained too *much* detail. *See, e.g., Standefer v. State,* 59 S.W.3d 177 (Tex.Crim.App. 2001). This, despite the fact that the trial

judge's ruling was explicitly based on the conclusion that the question contained too *much* factual detail. This, despite the fact that the State argues specifically: "Here the appellant was attempting to ask broad-based 'fair and impartial' questions to the jury panel, *which was appropriate,* but then he·tried to limit it to the exact age range of the victim in this case—eight to ten years old." Not content to merely create its new law, the majority also effectively transforms voir dire into an impossible guessing game by holding that the same question that was too vague or imprecise to be proper was also an improper attempt to commit the jury. *Barajas v. State,* 93 S.W.3d 36, 40 (Tex.Crim.App. 2002) (hereinafter cited as "Majority Op."). I protest. I object. I dissent.

### I. Relevant Question

The majority "cannot be certain to what issue in the case appellant's question was relevant." Majority Op. at 39. I can. The question was relevant to the potential jurors' qualifications. Article 35.16(a)(9) provides that a veniremember may be challenged for cause if "he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely...." A defendant is entitled to rely on the constitutional guarantee of an impartial jury. *See* Tex. Const. art. 1, § 10. This is the law applicable to each and every case, and defense counsel should have been permitted to qualify potential jurors on it. It relates directly to a juror's qualifications to serve: if the question had been asked and answered in the negative, the juror would not have been qualified to serve.

I also dispute the majority's assessment of the possible objects of counsel's question:

### A. Determining Guilt

The majority takes issue with the question appellant sought to ask because it was not directed at whether the potential juror would resolve the issue of appellant's guilt on the basis of the victim's age. Majority Op. at 39–40. Had a potential juror answered *that* question in the negative, the argument goes, she would have been challengeable for cause. *Id.* I do not see from this how the majority reaches the conclusion that had a potential juror answered *appellant's* question in the negative, she would *not* have been challengeable for cause.

I also dispute the majority's reasoning in this portion of the opinion because it implies that the trial court "require[d] that [the] parties phrase questions in a way that is precise enough to glean relevant information from the veniremember's answer." *Id.* This was the antithesis of the trial court's ruling, which was made during the following exchange:

[Prosecutor]: We are not voir diring on this case. The question is whether or not the jury can consider probation in any kind of indecency with a child case that they can conceive of. That's the issue. It's not this case. He's trying to voir dire *on the facts of this case.*

[Court]: You can voir dire in this regard. You can say whether or not they can consider probation with regards to indecency with a child, then you can say a child is someone under the age of whatever.

[Defense]: 17. And I would just further ask that I would ask would ask all those questions of each and every juror, and it's—my understanding is I can ask these, but I can ask under 17?

[Court]: Yes, if the law defines a child as someone under 17.

[Defense]: I cannot be more specific than that?

[Court]: Correct.

To imply that the trial court made its ruling in an attempt to require greater precision of defense counsel is to recast the trial judge's ruling in an entirely new, inaccurate light. It may be true that a trial court can require additional precision of a proposed question, but that is emphatically not what the trial court required here; here, the trial court required *less* specificity and not more.

### B. Credibility

In this regard, the majority attempts to distinguish our opinion in *Hernandez v. State*, 508 S.W.2d 853 (Tex.Crim.App.1974) on the basis that the question in *Hernandez* was precise and attempted to focus the veniremembers' attention on a relevant issue. Majority Op. at 40. I reassert that this question *was* directed at a relevant issue: the potential jurors' ability to be fair and impartial. To the extent that the question implicated the jurors' ability to fairly weigh the testimony of a child complainant, the question focused the jurors' attention on what may be *the* issue in an indecency with a child case. Because there are rarely witnesses to such offenses, the trials evolve into what may best be termed a swearing match. I understand that appellant's counsel did not use precisely the same words as counsel in *Hernandez* did, but this hardly seems to rise to the level of a persuasive distinction.

### C. Assessing Punishment

In this subsection of the majority opinion, appellant's proffered question is rejected on the basis that it was an improper attempt to commit the veniremembers to assess or refrain from assessing punishment on the basis of the victim's age. Majority Op. at 40. The same question the majority first rejected for its lack of precision is rejected because it might commit the jurors to a certain resolution!

This portion of the majority opinion is not only short on logical support, its lack of clarity harms all of the parties who would benefit from a meaningful chance to voir dire prospective jurors: the defense, the state and the trial judge. First and foremost, this is so because it is impossible to understand what makes a question too imprecise and too precise or some variation thereof.

Second, this portion of the majority opinion effectively overrules a case delivered earlier this term, *Standefer*, 59 S.W.3d 177. In *Standefer* we held that "a question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." 59 S.W.3d at 180. We continued and specifically addressed the question at issue in *Nunfio v. State*, 808 S.W.2d 482, 485 (Tex.Crim.App.1991). "For example, the question, 'If the victim is a nun, could [the prospective juror] be fair and impartial?' does not ask the prospective juror to resolve or refrain from resolving any issue." *Standefer*, 59 S.W.3d at 180.

At the time *Standefer* was handed down, I expressed my disagreement with the opinion. *Standefer*, 59 S.W.3d 177, 186–87 (Johnson, J., dissenting, joined by Meyers, Price and Holcomb, JJ.). I now find myself thrust into the role of *Standefer's* unwitting defender. In *Standefer*, asking a potential juror whether she could be fair and impartial did not require the juror to resolve or refrain from resolving an issue. *Standefer*, 59 S.W.3d at 180. Now it apparently does. The sleight of hand involved in stating that "The appellant may not seek to commit venire members to assess or refrain from assessing punishment on this basis" does not alter the fact that "Could you be fair and impartial" does not call for a *resolution* in any sense of the term. Nor does it change the fact that the question does not, therefore, meet the definition of "commitment question" enunciated so recently in *Standefer*. *See* Majority Op. at 40. Why does the majority apply the challenge for cause test to a question that does not require a commitment? I cannot be sure. Either the law is already back to the state it was in before *Standefer*, and no one knows precisely *which* quantum of detail transforms an otherwise acceptable question into a commitment question, or the question was not a commitment question, and now all questions must conform to the challenge for cause test enunciated in *Standefer*.

I also think that to disallow a question such as the one appellant sought to ask is to misapprehend the nature of noncapital punishment hearings. The majority states, "If the appellant's aim was to determine whether venire members would consider the victim's age in assessing punishment, it was an improper pursuit." Again, I ask why. The Legislature has made it abundantly clear that in the punishment phase of a noncapital trial, jurors may consider *any* information that the court deems relevant. Tex.Code Crim. Proc. Ann. art. 37.07(a)(1) (Vernon Supp.2002). Whose interest does it serve to disallow counsel from inquiring about the many sources of information potential jurors can consider?

## II. Nunfio

The majority recites the rules of *stare decisis* yet fails to show how *Nunfio* is actually badly reasoned or unworkable. At most, it seems that the *Nunfio* decision is one that the majority finds unacceptable. This is no basis for overruling decisions. I also disagree with the majority's overruling of *Nunfio* because the law that remains in *Nunfio's* stead is no more insight-

ful or workable than the law that preceded it.

### A. Reasoning

In making its arguments against *Nunfio*'s "reasoning," the majority merely attacks *Nunfio*'s reliance on *Abron v. State*, 523 S.W.2d 405 (Tex.Crim.App.1975) and *Hernandez*, 508 S.W.2d at 854. I think this attack is at once unpersuasive and misdirected in that it overstates *Nunfio*'s reliance on the cases and leaves *Nunfio*'s underlying reasoning intact.

In order to better convey the comparatively small role *Abron* and *Hernandez* played in the *Nunfio* holding, I quote the relevant portion of the opinion in full here:

> The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion. *See* *Smith v. State*, 703 S.W.2d 641 (Tex. Crim.App.1985) and cases cited therein; *see also*, *Smith v. State*, 513 S.W.2d 823 (Tex.Crim.App.1974). The propriety of the question which the defendant sought to ask is determinative of the issue. *Smith*, 703 S.W.2d at 643. We have held that a question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* at 643, *citing* *Powell v. State*, 631 S.W.2d 169 (Tex. Crim.App.1982).
>
> Here, the question posed by appellant's counsel sought to determine potential bias or prejudice in favor of the victim by virtue of her vocation. Similar inquiries have been held to be proper. *See, e.g., Abron* ...; *Hernandez*.... The question in this case was proper, and, thus, error is shown.

*Nunfio*, 808 S.W.2d at 484–85. On my reading of this discussion, the holding was based on the court's conclusion that the question was proper because it sought to discover the jurors' views on an issue applicable to the case, here bias in favor of the victim. The holding was not, as the majority implies, based solely on the question's similarity to the questions asked in *Hernandez* and *Abron*.

Nor does the majority persuasively distinguish either case. The majority attempts to distinguish both cases by asserting that the questions in *Abron* and *Hernandez* were tailored to get to an issue in the case. Majority Op. at 40–41. As mentioned earlier, in a case that may devolve into a courtroom swearing match, questions about the potential jurors' ability to be fair and impartial vis-á-vis a child complainant don't merely "get to the heart of an issue," they get to an issue that may be the heart of the trial. Finally, if the question in this appeal did *not* get to an issue in the case, then it hardly seems an appropriate candidate for commitment question status.

### B. Unworkable Standard

The majority decries appellant's question as "a license to go fishing, without providing any concrete information for the intelligent use of peremptory or for-cause challenges." What the majority finds so objectionable about this question is still unclear to me. On the one hand it addressed one of the many areas that a juror may consider in assessing a sentence: the victim's age. It also targeted the jurors' ability to be impartial, and thereby, the potential jurors' qualifications. *See* Tex. Code Crim. Proc. art. 35.16(a)(9); Tex. Const. art. I, § 10. The cases upon which the majority relies in support of the assertion that the question here was a global fishing expedition are simply not relevant or persuasive.

In *Boyd v. State*, 811 S.W.2d 105, 119–20 (Tex.Crim.App.1991), the trial court rejected defense counsel's proffered questions because the defendant was being tried for capital murder and defense counsel re-

fused to tie his questions to Texas's statutory special punishment issues. *Id.* Such a holding is simply not dispositive for non-capital sentencing, during which the jury may consider any matter the court deems relevant to sentencing.

There are also several flaws in the majority's reliance on *Smith*, 703 S.W.2d 641, 645 (Tex.Crim.App.1985). First, our holding in *Smith* was based on our conclusion that the question was duplicitous as much as it was on our conclusion that the question was a global fishing expedition. *Id.* Second, in phrasing alone, the question in *Smith* was far broader than the question in *Nunfio* and in this case, both of which could be answered with a "yes" or "no." It is also important to note that the *Smith* court was actually reversing a trial court's *disallowance* of several questions as an abuse of discretion. One of the improperly disallowed questions was what the jury panel's "idea of punishment" was and "what [the jurors] think its purpose should be." *Id.* Such questions, which were held in *Smith* to be proper, are far more vague, imprecise and open-ended than that in *Nunfio* or the instant case.

*Gonzales v. State*, 3 S.W.3d 915 (Tex. Crim.App.1999) is factually dissimilar and, indeed, points to some of the serious pitfalls of the majority opinion. In *Gonzales*, we rejected the appellant's argument that one of the jurors had engaged in misconduct by making a false statement on a written juror questionnaire. In explaining why no error was presented by the juror's false statement, we stated:

> [W]e have long insisted that counsel be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential bias or prejudice:
>
>> defense counsel has an obligation to ask questions calculated to bring out that information which might be said

to indicate a juror's inability to be impartial, truthful, and the like. Unless defense counsel asks such questions, we must hold, as we do here, that the purportedly material information which a juror fails to disclose is not really 'withheld' so as to constitute misconduct which would warrant a reversal.

*Gonzales*, 3 S.W.3d at 917 (quoting *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim. App.1980), *overruled on other grounds*, *Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim.App.1984)). I can think of no question more diligently directed at uncovering bias than "Can you be fair and impartial?" Yet the majority would disallow this question as too imprecise—all the while making incumbent on counsel the obligation to uncover bias. I do not think we should impose this obligation without giving counsel the tools to fulfill it.

### III. Conclusion

For over a decade, litigators and trial courts functioned under the law enunciated in *Nunfio*. Today the majority overrules *Nunfio* in favor of law that is plagued with inconsistencies and will be impossible for trial courts and litigators to apply. Until this decision, a proper question on voir dire was one that (1) was relevant to an issue in the case, (2) did not commit the veniremember to a conclusion based on a particular set of facts, (3) was not duplicitous or repetitious and (4) was in proper form. *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex.Crim.App.1995). Today, a question that was relevant to an issue in the case—the victim's age and its effect on the victim's credibility or the jury's assessment of punishment—is no longer relevant. A question that earlier this term was not a commitment question has become one in the very same stroke it has become too vague and imprecise. I would

not overrule *Nunfio* because I believe the doctrine of *stare decisis* requires greater forbearance than that exhibited by the majority today. If *Nunfio* must be overruled, however, I certainly would not leave in its wake law that makes meaningful voir dire a near-impossibility and essentially requires litigators to get their questions pre-approved with this Court. Accordingly, I dissent.