# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00067-CR

**Zachary Jones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. 2011046, HONORABLE FRANK W. BRYAN, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Zachary Jones was convicted of the state-jail felony of possessing a controlled substance, cocaine, in an amount less than one gram after his plea of guilty. *See* Tex. Health & Safety Code Ann. § 481.112(a), (b) (West 2003). Two enhancement paragraphs of the indictment charged that Jones had been convicted on prior occasions of the felony of possession of cocaine. *See* Tex. Pen. Code Ann. § 12.42(a)(2) (West Supp. 2004). The jury found the enhancement paragraphs true and sentenced Jones to confinement for ten years. In nine points of error, Jones challenges rulings and limitations set by the judge during *voir dire*, a comment made by the trial judge in the presence of the jury, and oral and written supplemental instructions the judge gave to the jury regarding its deliberations. For the reasons that follow, we affirm the judgment of the trial court.

**BACKGROUND**

Jones was charged with possession of less than a gram of cocaine, a state-jail felony punishable by 180 days to two years in state jail. *See* Tex. Health & Safety Code Ann. § 481.112(a), (b); Tex. Pen. Code Ann. § 12.35 (West 2003). Because Jones had been previously convicted of two non-state-jail felonies (both for possession of cocaine), the indictment contained enhancement paragraphs alleging these two prior convictions. If found true, the enhancement paragraphs would increase Jones's punishment range to two to twenty years in the institutional division of the Texas Department of Criminal Justice. *See* Tex. Pen. Code Ann. § 12.33(a) (West 2003), § 12.42(a)(2) (West Supp. 2004). The case was set for trial, a jury was convened, and *voir dire* commenced. After the jury was selected, Jones pled guilty in the presence of the jury. The court accordingly instructed the jury to find Jones guilty of the offense, and the jury returned a guilty verdict, ending the guilt-innocence phase of the trial. The trial then proceeded on the punishment issue because Jones had elected to have the jury determine his punishment. After hearing evidence, the jury found that the enhancement charges were true and assessed a punishment of ten years' imprisonment. Jones appeals both his conviction and sentence.[1]

---

[1] Although Jones's prayer for relief asks that the conviction be set aside, because he pled guilty and because his points of error relate only to the punishment assessed, we will address only the sentence.

**DISCUSSION**

***Errors relating to* voir dire**

In points of error one through five, Jones challenges the district court's limitations upon his *voir dire* questioning and its overruling of his motion for mistrial based on the limitations. Jury *voir dire* serves two primary purposes: (1) to discover if a venire member has such bias or prejudice as to be challengeable for cause, and (2) to aid the attorneys in intelligently exercising their peremptory strikes. *See Barajas v. State*, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002). We review a trial court's rulings on particular *voir dire* questions under an abuse-of-discretion standard. *Id.* at 38. A trial court abuses its discretion only when a proper question about a proper area of inquiry is prohibited. *Id.* A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts or is so vague or broad in nature as to constitute a "global fishing expedition." *Id.* at 38-39. If a trial court errs by preventing the asking of a proper question during *voir dire*, the appellate court conducts a harmless-error review. *Gonzales v. State*, 994 S.W.2d 170, 171-72 (Tex. Crim. App. 1999); *see* Tex. R. App. P. 44.2(a). Under harmless-error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a).

Jones's first point challenges the trial court's limitation of his questioning venire members about their experiences with drug abuse or abusers. Initially, Jones's trial counsel raised the subject of drug use by asking venire member Herrera, "Do you know anybody that uses drugs?"

After Herrera responded that he knew people who formerly used drugs, defense counsel probed further: "Tell me about your experience with those people. How did that affect their lives?" Herrera answered that drugs affected those people's lives "in a bad way," and he and defense counsel continued to converse about the subject. Defense counsel then moved on to venire member Frager: "[T]ell me about your experience or someone you know their experience with drugs." The State objected to the question as improper *voir dire*. Defense counsel responded, "I should be allowed to ask this juror whether he knows or whether he's had any experience with drugs that might affect his decision and his ability to be a fair and impartial juror in this case." The court allowed defense counsel to ask the amended question, which inquired whether experience with drugs would affect the juror's ability to be fair. After a short exchange about the importance of being fair, defense counsel asked Frager if he knew anybody with a drug problem, to which Frager replied, "No." Defense counsel then asked venire member Hardin, "Do you know anybody that's had a drug problem?" After Hardin replied that he did, defense counsel asked him, "Tell me about that." Again the State objected. The court replied that if the question included the query as to whether the experience would affect his ability to be fair, then it would be proper. Defense counsel amended his question to include the fairness inquiry and continued to speak with Hardin, as well as several other venire members on the subject of drug use.

The State asserts on appeal, as it did in the trial court, that Jones's questions asking the venire members to "tell [him] about [their] experience with drugs" or people with drug problems were improper questions because they were overbroad. We agree. Although the substance of his

4

questions sought information about an issue relevant to the case—namely the venire members' prejudices about people who use drugs—the form of the questions was improper. By wording the questions with the open-ended phrase, "Tell me about . . . ," defense counsel invited narrative responses that potentially could have been lengthy, irrelevant, or prejudicial. These questions are like other questions that have been held to be overly broad. *See Boyd v. State*, 811 S.W.2d 105, 119-20 (Tex. Crim. App. 1991) (improperly broad to ask "What I'm basically asking you is what you as a layman think is a case that is proper for the death penalty to be imposed?"); *Smith v. State*, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985) (improperly broad to ask venire members what "their thoughts" were on insanity defense). To have been proper, defense counsel's questions should have sought more directed responses on the subject of venire members' experience with drug use. *See Barajas*, 93 S.W.3d at 39 (Tex. Crim. App. 2002) (trial court may, within its discretion, require that parties phrase questions in way that is precise enough to glean relevant information from venire member's answer).

Even if the questions Jones sought to ask were proper, we conclude that the court's limitation on them did not constitute reversible error. Jones specifically complains about five venire members whose questioning about drugs was limited. Venire member Hardin answered the amended question by stating that he viewed drug problems as an illness and indicated that rehabilitation was possible ("to recreate the norm, you have to remove the chemical, change the environmental stimulus that created the situation in the beginning and then the person has an opportunity"). Hardin's answer was plausibly favorable to the defense. Venire member Booher simply answered "No" to the

5

question of whether she had had any experience with drugs that would affect her ability to be fair.**²**

The third venire member, Frager, stated that he did not know anyone who had had a drug problem. The restriction of the question to how one's experiences with drugs or drug addicts might affect his ability to be fair could not have contributed to the sentence with respect to this jury member. The fourth venire member, Buggs, answered the questions, "do you think that drugs are an illness?" and "tell me about [your experiences with drug illnesses]" as it affected her ability to be fair. Her responses, however, did not indicate a tendency to be heavy on punishment. If anything, her responses were equivocal: "I don't think that it would affect my ability to be fair. . . . I really believe rehabilitation can work. . . . I also think that prison sometimes works. . . . So I'm not definite on one side or the other. In the cases that I've seen [her cousin and her sister], neither one had to go to jail." The fifth venire member, Galvan, replied as equivocally as Buggs ("I could definitely look at the low spectrum and the high spectrum depending on the facts of the case.").

The only error Jones asserts here is that the trial court required him to amend his question to ask whether the venire members' drug experiences would affect their ability to be fair. Reviewing the answers of jurors Buggs and Galvan to the question as amended, we conclude that the limitation on the question did not affect Jones's substantial rights.

Jones next asserts that the trial court prevented his proper questioning of venire member Acosta. After Acosta mentioned that a repeat offender might be in need of a more severe

---

**²** Neither Booher nor Hardin ultimately served on the jury.

punishment because he should have learned from his mistake the first time, Jones's attorney followed up by asking what she meant. He pursued this line of inquiry by first asking, "What do you think affects a person's ability to learn?" He then asked, "What do you think about how far someone goes in school? Would that be important to you to know whether someone could learn?" The State objected to the two questions as improper commitment questions. The court sustained the objection.

Jones asserts that the questions were not improper because they were merely follow-up questions seeking to ascertain what Acosta's answer meant. Also, he asserts that the ruling usurped his right to effectively exercise his peremptory strikes. We disagree.

Commitment questions are those that commit a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Sometimes the law requires a certain type of commitment from jurors, such as being able to consider the full range of punishment; such questions are therefore proper, even though they are commitment questions. *Id.* at 181. However, if the law does not require a commitment—such as whether a juror considers a particular type of evidence to be mitigating—such questions are invariably improper. *Id.* A trial court does not abuse its discretion by refusing to allow a defendant to ask venire members questions based on facts peculiar to the case at trial, such as about particular mitigating evidence. *Raby v. State*, 970 S.W.2d 1, 3 (Tex. Crim. App. 1998). We conclude that here defense counsel's questions were improper because they were designed to bind the prospective juror to particular facts—that the defendant was not well-educated—in an effort to commit her to taking a stance on whether that would be a mitigating factor

7

in the punishment.[3]  Thus, the trial court did not abuse its discretion in sustaining the State's objection.  Jones's second point is overruled.

Jones's third point challenges the trial court's limitation of his questioning of venire member Sagebiel about a defendant's age and background.  After a discussion with a few other venire members about prior convictions and the role that one's age plays, defense counsel posed the following hypothetical to Sagebiel:

> Young woman, living with sister because father is in the penitentiary and mother has died of an overdose.  Sister couldn't get a job because she was born—she had difficulty getting a job because she was born with a birth defect.  And other brothers and sisters are selling drugs and they learned that from their father.  And so that this child, this little sponge that all this little kid knows from the time that they're old enough to hear and understand words is about drugs and selling drugs and poverty.  Do you think that that kid has the same understanding as the kids you're talking about [who are past the age of ten]?

The State objected that this was again an improper commitment question, and the court sustained the objection.  Defense counsel pressed on: "Tell me, do you think that there are other things that might impact a child's understanding or perception of their options?"  Again, the State objected as an improper question, and the court sustained the objection.  Jones asserts that the trial court improperly prohibited him from asking these questions because defense counsel was trying to understand what Sagebiel's answers meant, and because the questions were proper as means to enable him to effectively exercise his peremptory strikes.

---

[3]  Acosta did not ultimately serve on the jury.

The first question, in the form of a hypothetical, was properly prohibited as an improper commitment question. It conveyed to Sagebiel particular facts—a child growing up in a poor family with drug problems and a dire future—in an effort to commit her to a determination that such circumstances would be mitigating. The second question, seeking Sagebiel's thoughts about other things that might impact a child's understanding, was properly prohibited as being overly broad and vague. Like the question about venire members' experiences with drugs or drug abuse, this question was not "precise enough to glean relevant information from the venire member's answer." *Barajas*, 93 S.W.3d at 39; *see Smith v. State*, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985). Because the questions were improper, we overrule Jones's third point.

In his fourth and fifth points of error, Jones asserts that the trial court reversibly erred in overruling his motion for mistrial based on the *voir dire* limitations. Specifically, he asserts that the limitations prevented him from adequately exploring the issues necessary to intelligently exercise his peremptory challenges and thus violated the U.S. and Texas constitutions. *See* U.S. Const. amend. V, VI, XIV; Tex. Const. arts. I, §§ 10, 19. A mistrial is an extraordinary measure used when an error is so prejudicial that an impartial verdict cannot be reached. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Because we have concluded that any error caused by the *voir dire* limitations was not reversible error, we overrule Jones's fourth and fifth points.

***Court's comment***

In point of error six, Jones challenges the trial court's denial of his motion for mistrial based on the court's comment to the jury that the judge was surprised by Jones's guilty plea. Before the jury was convened for *voir dire*, Jones pled "not guilty" in the presence of the judge. *Voir dire*

9

was then conducted. After several jurors were excused and the remaining twelve jurors were assembled in the courtroom for the beginning of the trial, the jury was sworn in and the prosecutor read the indictment. The judge then asked Jones how he pled:

> Jones:      Guilty.
>
> The Court:  I am sorry?
>
> Jones:      Guilty.
>
> The Court:  You may be seated. Thank you. May I have the lawyers approach, please?

After a bench conference outside the hearing of the jury, the judge instructed the jury:

> Ladies and gentlemen of the jury, that—that plea of guilty from Mr. Jones is—comes as a little bit of a—well, not a little bit, a lot—surprise to the Court. And what takes place at this point is that the Court has to prepare some written instructions for you and then you will return to the jury room with those instructions to arrive at a verdict. It will be based on defendant's plea of guilty to the charges, as opposed to a not guilty plea. So the instructions that I will give you are going to be somewhat different than the instructions I had prepared in the event of a not guilty plea. So it's going to take me a little bit of time to put those together. But the good news is, this phase of the trial is—is quite a bit shorter, the guilt-innocence phase of the trial.

Outside the presence of the jury, defense counsel objected to the judge's comment about being surprised and requested a mistrial; the judge denied the mistrial but gave the jury the following instruction to disregard:

> We're almost ready for the reading of the Court's charge [instructing the jury to find Jones guilty]. And there's one thing I need to mention to you before we start that. And it's basically an instruction that I'm going to give you that's not in the charge. It's just an additional verbal instruction. And that is, before the first break, after the

10

defendant's plea of guilty, the Court made a comment about being surprised. And you are instructed to completely disregard the Court's comment about that. And you may not consider that comment for any purpose whatsoever in your deliberations, either in this part of the trial or in your deliberations in the punishment part of the trial. You're not to consider that at all, has no bearing on the case. Does everybody understand that?

To constitute reversible error, a comment by the trial judge to the jury must be reasonably calculated to benefit the state or to prejudice the rights of the defendant. *Becknell v. State*, 720 S.W.2d 526, 531 (Tex. Crim. App. 1986). The comment is to be considered from the jury's standpoint. *Kincade v. State*, 552 S.W.2d 832, 835 (Tex. Crim. App. 1977). To determine whether the comment is either reasonably calculated to benefit the state or to prejudice the rights of the defendant, an appellate court must first determine whether the trial court's statement was material to the case. *Burge v. State*, 443 S.W.2d 720, 724 (Tex. Crim. App. 1969); *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.). A statement is material if it: (1) implies approval of the state's argument, (2) indicates any disbelief in the defense's position, or (3) diminishes the credibility of the defense's approach to its case. *See Clark*, 878 S.W.2d at 226.

Jones asserts that the judge's statement about surprise at his guilty plea was material because it diminished the credibility of his decision to "accept responsibility by pleading guilty" and to argue leniency in sentencing on that basis. Jones cites as evidence of such materiality certain jurors' "reactions" to the comment noted on the record by defense counsel. However, in the context of the trial at that point and considering the overall defense advanced, we hold that this comment did not diminish Jones's approach to the case. Although Jones's trial counsel focused in *voir dire* exclusively on punishment, rather than guilt-innocence, it is unlikely from the jurors' perspectives

11

that Jones had any approach to the case. Defense counsel had not yet made any arguments or put on any evidence. It is unlikely that Jones's trial strategy—to accept responsibility—was prejudiced, because nothing along those lines had yet been argued. Jones's trial counsel argued in his opening statement that the evidence would show Jones had accepted responsibility for the cocaine in this case as well as the previous two occasions; that as a result of this arrest Jones had made a big change in his life, getting sober and becoming involved in his two-year-old daughter's life; and that Jones himself had suffered a rough family life with an absentee, drug-addict father. However, Jones did not present any evidence to substantiate counsel's opening remarks. It is difficult to conclude that the court's comment diminished the credibility of an approach that was never developed at trial.

Furthermore, even if we determined that the judge's comment was material, any error resulting from such a comment may generally be cured by an instruction to disregard. *See Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981). We must presume that curative instructions are efficacious. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). A mistrial

> ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given. . . . Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury [from] being unfairly prejudiced against the defendant may a motion for mistrial be granted.

*Id.* at 698. In this case, we believe that the judge's instruction to disregard his comment about surprise cured any error that may have arisen. Although Jones argues that the instruction merely compounded the prejudice by repeating the comment, we find that the instruction was specific to the comment and mitigated its effect. In looking at the comment in light of the entire record, we cannot

12

say that the judge's comment and subsequent failure to order a mistrial after the curative instruction were reversible error. We therefore overrule Jones's sixth point of error.

*Supplemental jury instructions*

In points of error seven through nine, Jones asserts that the trial court erred in making oral and written supplemental jury instructions and in overruling his motion for mistrial based on the instructions. After six hours of jury deliberation on punishment, the court called the jury into the courtroom because it had received word through the bailiff that the jury had reached a verdict. The jury entered the courtroom, but the presiding juror remained behind. The trial court then had a bench conference with the attorneys, indicating to them that the jury had communicated to the bailiff that the presiding juror had reservations about the verdict and could not or would not go through with it. The court then suggested two alternatives for dealing with the situation:

> The Court: I'm going to ask the question: Has the jury reached a unanimous verdict? And depending upon the answer to that, we either go forward or we don't go forward. If—if the answer is yes, certainly both sides are entitled to a poll of the jury. But so—apparently, she is teetering on whether that is her verdict or not. And the question is going to be: Have you reached a unanimous verdict or not? It's my view that it's better to ask that in the courtroom out here where she's not subject to pressure from the other 11 jurors in the jury room. An alternative would be to send them back in the jury room and let us know when they have a unanimous verdict. But it seems to me there is more pressure on the one juror in that situation than when she has to answer to the Court the question. But that—I mean, that's just my thinking. I will allow it.

> Defense: I would request that they just be sent back, since she's the foreperson of the jury and has indicated through a communication to the bailiff that she's not certain of the verdict that she had previously apparently agreed to with the other 12. That to have her in here, I think I

13

> disagree with the Court would be coercive and that she would not feel
> as free to—

The Court:     Okay.

The presiding juror then joined the rest of the jury in the courtroom to receive the following instruction:

> [I]t has come to my attention that there is a question about whether the verdict is a unanimous verdict. As the instructions tell you, the verdict must be a unanimous verdict. It must be each individual's verdict without exception. And so what I need you to do is retire again to the jury room and continue to deliberate, if you can, in an attempt to reach a unanimous verdict. You are to follow the instructions that I have given you in the charge. And if it's necessary for you to communicate with me further, do so in the manner that the charge requires, which is in writing signed by the presiding juror. So please retire to the jury room and continue your deliberations at this point. Thank you.

The jury again retired to deliberate, and shortly thereafter the court received a written question signed by the presiding juror reading, "Can the presiding juror be changed?" The judge prepared a written reply stating,

> The presiding juror you have elected will continue to be the presiding juror unless she resigns or refuses to serve as such. In the event that she should resign or refuse to continue to serve, the jurors may choose another presiding juror. Whether or not you elect a new presiding juror, your verdict must be unanimous.

Jones's seventh issue argues that the trial court's oral instruction sending the jury back to deliberate was erroneous because it was not written, was not in response to a written jury request, and was coercive by assuming that a verdict had been reached when one had not and by

14

suggesting that the presiding juror was holding out. Specifically, Jones asserts that the oral instruction violated articles 36.16 and 36.27 of the code of criminal procedure.[4] *See* Tex. Code Crim. Proc. Ann. arts. 36.16, .27 (West 1981). However, Jones did not preserve this error because he did not object to the oral instruction at trial. *See Brooks v. State*, 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.). Rather, Jones appeared to agree with the court's decision to choose the alternative requested by defense counsel—to send the jury back for more deliberation. If this was error, we will not reverse unless the error is so egregious and created such harm that the appellant has not had a fair and impartial trial—in other words, unless there has been egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op. on reh'g); *Brooks*, 967 S.W.2d at 950. Errors that result in egregious harm are those that affect the essential dispute in a case or disturb the basis of the defensive theory. *Brooks*, 967 S.W.2d at 950. In determining

---

[4] Article 36.16 provides in relevant part:

> After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15.

Tex. Code Crim. Proc. Ann. art. 36.16 (West 1981). Article 36.27 provides in relevant part:

> When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel . . . .

*Id.* art. 36.27 (West 1981).

15

whether egregious harm occurred, we must review the error in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.*

Based on the communication from the jury passed along to the court through the bailiff, the court did not improperly "assume" that a verdict had been reached, despite Jones's argument to the contrary. Indeed, the final verdict form sentencing Jones to ten years' imprisonment contained the signature of the initial presiding juror, obliterated and re-signed by the new presiding juror. This is strong evidence that the presiding juror at one point, likely before the communication was sent through the bailiff, did reluctantly agree to the verdict. She then apparently had second thoughts and declined to support the verdict. However, once the jury received confirmation that the presiding juror could be changed, the jury quickly returned a unanimous verdict. The judge's oral instruction, given in context of a juror having second thoughts about a verdict, was not egregious error. The comment merely reiterated to the jury the earlier charge that a verdict must be unanimous and summed up the communications received through the bailiff. The court's comment was not coercive because it merely requested the jurors to deliberate some more, if they could, in an attempt to reach a unanimous verdict. We accordingly overrule Jones's seventh point.

Jones's eighth point challenges the trial court's written answer to the jury's question about whether the presiding juror could be changed. Specifically, Jones challenges the last sentence of the court's written answer, alleging that it went beyond the question asked by including a mention that the verdict must be unanimous and in so doing it was coercive. Jones objected to the instruction at trial but was overruled. Jones asserts that the written answer violates article 36.16 of the code of

16

criminal procedure because it went beyond the jury's request. *See* Tex. Code Crim. Proc. Ann. art 36.16 ("[N]o further charge shall be given to the jury unless required by . . . the request of the jury."). If a supplemental jury instruction violates article 36.16, the judgment "shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). The last sentence of the instruction merely restated the court's initial written charge to the jury conveying the fact that a verdict must be unanimous. If an instruction may properly be given in the original charge, it may be given as an additional instruction. *Allaben v. State*, 418 S.W.2d 517, 521 (Tex. Crim. App. 1967). A reference to the original charge is not considered an additional instruction. *Earnhart v. State*, 582 S.W.2d 444, 449-50 (Tex. Crim. App. 1979). Viewed in context of the initial presiding juror's reservations about serving and the jury's question about whether a different presiding juror could be chosen, the instruction that a verdict must be unanimous, no matter who served as the presiding juror, was not calculated to injure Jones's rights and did not result in an unfair trial.

Because we overrule Jones's seventh and eighth points on supplemental jury instructions, we also overrule his ninth and last point, which asserts that the trial court erred in denying his motion for mistrial based on these instructions. We review the denial of a motion for mistrial under an abuse of discretion standard. *Ladd*, 3 S.W.3d at 567. Here, any error arising from the oral and written supplemental instructions was not so prejudicial as to contribute to the rendering of an impartial verdict and therefore was not an abuse of discretion. *See id.*

17

## CONCLUSION

We hold that none of Jones's asserted errors rise to the level of reversible error. We therefore affirm the district court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   December 11, 2003

Do Not Publish

18