IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. 74,533






RYAN HEATH DICKSON, Appellant



v.



THE STATE OF TEXAS





ON APPEAL


FROM POTTER COUNTY






 Johnson, J., delivered the unanimous opinion of the Court.


O P I N I O N



 On September 18, 2002, appellant was convicted of the capital murder of Marie Surace. Tex.
Penal Code Ann. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas
Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death. 
Art. 37.071 § 2(g). (1) Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises five
points of error. We affirm.

 In his first point of error, appellant claims that the trial court erred in denying his motion for new trial
based on his contention that juror Henderson withheld information during voir dire. Appellant claims that,
had he known Henderson was aware that appellant had been convicted of capital murder and sentenced
to death in another case, he would have used a peremptory strike to exclude Henderson from serving on
the jury.

 Before the trial in this case, appellant was convicted of the capital murder of Carmelo Surace and
sentenced to death. Marie and Carmelo Surace were shot and killed during a robbery of their family-owned store. (2) At the beginning of voir dire, the trial judge asked the prospective jurors whether they knew
anything about this case. Several responded that they did, and the trial judge interviewed them individually. 
Henderson did not indicate that he knew anything about the present case at that time. (3) However, at the
beginning of individual questioning, the following exchange occurred.

 THE COURT: Do you know anything about this particular case?

 

 HENDERSON: I - - I am vaguely familiar with it. I think I went to high school
with one of the sons of the Surace family.

 

 THE COURT: Okay. All right.

 

 HENDERSON: You know, what I've read in the papers and heard on the news.

 

 THE COURT: Okay. So, you remember when it happened then, I guess?

 

 HENDERSON: Yes. Uh-huh. Yes.

 

 THE COURT: Okay. And have you from that or from any source, from hearsay or
otherwise, already pre-formed any opinions as to the guilt or the
innocence of the accused person in the case?

 HENDERSON: Uh - - no.

The court then explained the process for individual questioning and Henderson's voir dire continued. Later,
the prosecutor asked the following:

 THE PROSECUTOR: You stated that uh - - that you did know something about this case. Uh -
- did you know about this - - anything about this case prior to the - -
coming to the panel downstairs?

 

 HENDERSON: Oh, I remember when it happened, and I mean - - nothing in
particular, just - - you know, what you see through the media. 
And I recognized the names of the person I went to high school
with. I didn't know him well. I mean, I just knew the
circumstances - -


 THE PROSECUTOR: Okay. And who was that?


 HENDERSON: Vince Surace.

 

 THE PROSECUTOR: Okay. You didn't know him well?


 HENDERSON: I didn't. I just knew who he was. 


 THE PROSECUTOR: Okay. Was there any - - anything in those - - in that knowledge about
Mr. Surace that would - - that would sway you either way here?


 HENDERSON: No.


 THE PROSECUTOR: Okay. It wouldn't make you for him or against him?


 HENDERSON: No.

 At the motion for new trial hearing, Henderson testified that two of appellant's investigators
contacted him after the trial. As a result of their communication, Henderson signed an affidavit which stated
that, at the time of trial, he knew that appellant had been convicted of the capital murder of Carmelo Surace
and that he was on death row. He also knew that appellant's co-defendant had been sentenced to fifteen
years for his involvement in the crime but thought that he could have negotiated a better deal with the state
if he "had better counseling or played his cards right."

 Appellant asked Henderson why he did not come forward with this information and Henderson
responded as follows:

 HENDERSON: They asked me if I was familiar with the case, and I told him I
vaguely was through what I had heard in the media and read in the
newspaper, so ...


 DEFENSE COUNSEL: Okay. That's right. But you didn't tell us that you knew that he
had received a capital murder conviction and sentence of death,
did you?


 HENDERSON: I - - I don't know at that time I said that. I don't know that I was
asked exactly that way, I mean ...


 DEFENSE COUNSEL: Did it not occur to you, Mr. Henderson, that we - - I guess
maybe both sides would - - certainly the Defense would have
been interested to know if you knew that Ryan was on death row
when we tried this case?


 HENDERSON: I would assume if you wanted to know that you would have
asked me that.


 DEFENSE COUNSEL: Okay. So for me to find out whether or not you knew that
information, I would have had to say, Mr. Henderson, are you
aware that Ryan is on death row? Is that the only way I could
have found that out?


 HENDERSON: No. I mean, I believe from my answer, if I remember, you know,
vaguely about the case and what happened through the media and
the newspaper. If you read the newspaper or watch the media,
you would have known what happened at that point, I think. I
mean, I - - that makes common sense to me. Maybe I'm wrong.


Motion for New Trial

 We review the trial court's ruling denying appellant's motion for new trial under an abuse of
discretion standard. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App.), cert. denied, 534 U.S.
855 (2001). We do not substitute our judgment for that of the trial court, but simply determine whether
the trial court's ruling was arbitrary or unreasonable. Id.

A. Withheld Information

 The record reflects that, when asked whether he knew anything about the case, Henderson replied
that he did and that he had learned about the case through the media. The record also reflects that
appellant did not ask any questions regarding what Henderson knew about the case, though he had ample
opportunity to do so. Only the state and the trial court posed those questions. If appellant wished
Henderson to elaborate on his answers, he could have asked him to do so during voir dire. Henderson
did not "withhold" material information during voir dire. Thus, the trial court did not abuse its discretion
in denying appellant's motion for new trial. Appellant's first point of error is overruled.

B. Outside Influence

 In his second point of error, appellant claims that the trial court erred in denying his motion for new
trial based on his contention that the jury had "been subjected to outside influences in the form of contact
having been made with one or more jurors by a third party." Specifically, he claims that Carpenter, a juror
from his prior trial, improperly communicated with some or all of the jurors in this case.

 At the motion for new trial hearing, Carpenter testified that he had attended the majority of the trial
in this case in order to determine whether the jury in the prior case had received all available information
and because he was very interested in the case. He stated that during the proceedings he sat on the "state's
side" of the courtroom near the victim's family and sat on the defense side only when the "state's side" was
full. Carpenter went on to say that on one or two occasions he spoke with jurors in this case while outside
smoking during a break in the proceedings. He maintained that he just made "chit-chat" with the jurors,
then testified as follows:

 DEFENSE COUNSEL: Okay. Did you ever relate to any of the jurors that sat on the trial
during - - for the uh - - trial of September 2002, that you were a
juror in Ryan's first trial?


 CARPENTER: I either said juror, or I was on the trial [sic] on the first trial. I
don't remember exactly the words.


 DEFENSE COUNSEL: Well, would the implication, regardless of what the words were,
[be] that there was a prior trial involved?


 CARPENTER: Yeah, I guess it would be.


 DEFENSE COUNSEL: And did you indicate to them that you were involved in assessing
the death penalty against Ryan?


 CARPENTER: No.


 DEFENSE COUNSEL: Never?


 CARPENTER: No.


 DEFENSE COUNSEL: Did not do that?


 CARPENTER: No, sir.


 DEFENSE COUNSEL: How often did you talk to the folks that were on this panel?


 CARPENTER: One time, or maybe twice. And then I was asked not to talk to
them again.


 DEFENSE COUNSEL: Okay. And do you recall who asked you not to talk to them?


 CARPENTER: The court reporter.


 The court reporter testified that she had witnessed Carpenter attempting to get onto an elevator
with members of the jury and that she instructed him not to do so because he was not allowed to talk to
them. Carpenter then told her he could do anything he wanted, and she again instructed him not to speak
to the jurors. Henderson, the only juror to testify at the hearing on appellant's motion for new trial, related
that he was aware that Carpenter had spoken to a juror in the hallway and that the court reporter had
instructed him not to talk to the jurors. He noted that, while the jurors were aware that Carpenter had
served on the previous jury, Carpenter's presence had not influenced him, or to his knowledge, any of the
other jurors.

 Appellant claims that he is entitled to a new trial pursuant to Rule of Appellate Procedure 21.3(f)
, which states a defendant must be granted a new trial "when, after retiring to deliberate, the jury has
received other evidence; when a juror has talked with anyone about the case; or when a juror became so
intoxicated that his or her vote was probably influenced as a result." Tex. R. App. P. 21.3(f). 

 Appellant has the burden of proving an allegation of juror misconduct. Hughes v. State, 24
S.W.3d 833, 842 (Tex. Crim. App.), cert. denied, 531 U.S. 980 (2000). "When a juror converses with
an unauthorized person, injury is presumed." Alba v. State, 905 S.W.2d 581, 587 (Tex. Crim. App.
1995), cert. denied, 516 U.S. 1077 (1996), citing Green v. State, 840 S.W.2d 394, 406 (Tex. Crim.
App. 1992). Therefore, a new trial may be warranted. Hughes, supra. However, the state may rebut
this presumption of harm by showing that the case was not discussed or that nothing prejudicial to the
accused was said. Id. We defer to the trial court's resolution of historical facts and its determinations
concerning credibility and demeanor, and we view the evidence in the light most favorable to the trial
court's ruling. Quinn v. State, 958 S.W.2d 395, 401-02 (Tex. Crim. App. 1997). When there is
conflicting evidence, there is no abuse of discretion if the motion is overruled. Hughes, 24 S.W.3d at 842.

 As the state pointed out at the hearing on appellant's motion for new trial, "I think everybody would
feel a lot more comfortable" had Carpenter not come into contact with any of the jurors. Nevertheless,
the state's lack of comfort with the situation does nothing to rebut the presumed harm from Carpenter's
unauthorized communication with jurors. However, the record reflects that no particulars of the case were
discussed with Carpenter. It does not reflect that the jurors were influenced by the knowledge that
Carpenter had served on the previous jury. Thus, the trial court did not abuse its discretion in denying
appellant's motion for new trial. Appellant's second point of error is overruled.

Equal Protection Violation

 In his third point of error, appellant claims that the trial court erred by denying his motion to exclude
the death penalty as a sentencing option because the Texas death-penalty scheme violates the equal
protection clause of the United States Constitution. Relying on Bush v. Gore, 531 U.S. 98 (2000), he
claims that the lack of statewide standards to determine the "death worthiness" of individuals charged with
capital murder leads to the disparate treatment of those individuals. We have previously rejected such
arguments. See, e.g., Rayford v. State, 125 S.W.3d 521, 534 (Tex. Crim. App. 2003); Ladd v. State,
3 S.W.3d 547, 574 (Tex. Crim. App. 1999); McFarland v. State, 928 S.W.2d 482, 510-11 (Tex. Crim.
App. 1996). Appellant's discussion of Bush v. Gore does not persuade us to overrule our previous
holdings regarding this issue. Appellant's third point of error is overruled.


Voir Dire

 In his fourth point of error, appellant contends that the trial court erred in sustaining the state's
objection to two questions propounded by appellant to venire member Robinson. Appellant argues that
sustaining the objection to the questions regarding Robinson's ability to consider mitigating evidence served
to impermissibly limit the venire member's discretion in evaluating what he might consider to be mitigating
evidence. The following exchange occurred during the individual voir dire of Robinson:

 DEFENSE COUNSEL: Now regarding this poorly worded issue of the mitigating
circumstance, would you agree with me that that's also not a
question dealing with the past, but it's also maybe an issue dealing
with a person's future, that maybe they can be rehabilitated, or
maybe they can come around? Would you agree with that?


 ROBINSON: I would agree with that. I hadn't thought about it that way.


 DEFENSE COUNSEL: Okay. Or that there is - - there is hope maybe. It's not just a - -
it's not just a quest [sic] dealing with a person's prior - -


 THE PROSECUTOR: If it please the Court, I believe it's pretty clear that the definition talks
about a fact or circumstance which lessens or removes the moral
blameworthiness of the Defendant. That is in the statute. It doesn't say
anything about rehabilitation. It talks about a fact or circumstance
exhibiting, that reduces the moral blameworthiness. And I can read the
exact language, if the Court would wish.


 THE COURT: You are correct.


 THE PROSECUTOR: So we object to the suggestion that it has something to do with
rehabilitation.


 THE COURT: Sustained.


 DEFENSE COUNSEL: [To Robinson] I believe Mr. Murphy addressed this a little bit
with you. But what would be a mitigating circumstance, in your
mind?


 THE PROSECUTOR: Well, I believe, Your Honor, that we're not allowed to pin them down.


 THE COURT: Sustained.

 The trial court has broad discretion over the process of selecting a jury. Barajas v. State, 93
S.W.3d 36, 38 (Tex. Crim. App. 2002). We leave to the trial court's discretion the propriety of a
particular question and will not disturb the trial court's decision absent a showing of an abuse of discretion. 
Id. 

 A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry.
 Id. Whether or not the first question was proper, appellant was afforded the opportunity to ask the
question and received an answer before the state objected. Thus, he is unable to show he was harmed
when the trial court sustained the state's subsequent objection. Tex. R. App. P. 44.2. With respect to the
second question, it was improper because it was so broad in nature as to constitute a global fishing
expedition. Id. at 39. We have also held that a defendant is not entitled to question venire members about
their consideration of particular types of mitigating evidence. Rosales v. State, 4 S.W.3d 228, 233 (Tex.
Crim. App. 1999), cert. denied, 531 U.S. 1016 (2000); Raby v. State, 970 S.W.2d 1, 3 (Tex. Crim.
App.), cert. denied, 525 U.S. 1003 (1998). Thus, the trial court did not err in sustaining the state's
objections. Appellant's fourth point of error is overruled.

Ineffective Assistance

 In his fifth point of error, appellant argues that he received ineffective assistance of counsel. 
Specifically, he claims that, during voir dire, his trial attorneys failed to object to the prosecutor's questions
which committed prospective jurors to the proposition that a single "no" vote would result in a life sentence,
failed to object to the prosecutor's "fishing expedition" questions, and failed to object to the prosecutor's
questions which committed the prospective jurors to disregard the parole instruction in the charge on
punishment. Appellant insists that such failure to object was detrimental to his ability to persuade the jury
to give full weight and effect to the substantial mitigating evidence presented at trial.

 When reviewing a claim of ineffective assistance of counsel, this Court utilizes the two-prong test
set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong of the Strickland test,
appellant must show that counsel's performance was deficient. "This requires showing that counsel made
errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth
Amendment." Strickland, 466 U.S. at 687. Under the second prong of the Strickland test, appellant must
show that counsel's deficient performance prejudiced him. "This requires showing that counsel's errors
were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466
U.S. at 687. In other words, appellant "must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. There
is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional
assistance[.]" Id. at 689.

 Counsel's reasons for not objecting to the prosecutor's questions do not appear in the record. In
Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999), we explained that, in order to defeat the
presumption that counsel rendered effective assistance of counsel, "[a]ny allegation of ineffectiveness must
be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." 
Thompson at 813, citing McFarland , 928 S.W.2d at 500. Because the record is devoid of any
evidence that rebuts the presumption of effective assistance, we must presume that counsel's decision not
to object was reasonable trial strategy. Mallett v. State, 65 S.W.3d 59 (Tex. Crim. App. 2001). 
Appellant's fifth point of error is overruled.

 We affirm the judgment of the trial court.

 Johnson, J.

En banc

Delivered: October 13, 2004

Do Not Publish
1. Unless otherwise indicated, all references to articles refer to the Texas Code of Criminal Procedure.
2. Appellant's conviction and death sentence for the murder of Carmelo Surace was affirmed on direct
appeal. Dickson v. State, No. 73,044 (Tex. Crim. App., delivered April 26, 2000). His post-conviction application for
writ of habeas corpus challenging that conviction and sentence was denied in a written order. Ex parte Dickson, No.
47,314-01 (Tex. Crim. App., filed February 21, 2001).
3. Henderson did indicate in his juror questionnaire that he was familiar with some of the participants in this
case.