IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1400-10






CHRISTOPHER CONNLEY DAVIS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY





 Keller, P.J., filed a dissenting opinion.


 Defense counsel attempted to ask the prospective jurors what "factors" they considered to
be important in assessing the sentence "in a case of aggravated robbery with a deadly weapon." Like
the question in Barajas v. State, (1) regarding the ability of a prospective juror to be "fair and impartial"
under particular circumstances, the question in this case is ambiguous and subject to being
interpreted as an improper commitment question. Because of this ambiguity, I would hold that the
trial court did not abuse its discretion in excluding the question.

 We have upheld the refusal by trial courts to allow counsel to ask ambiguously worded
questions that could be interpreted as eliciting an improper commitment. In Barajas, defense
counsel attempted to ask whether prospective jurors could be "fair and impartial" in a case in which
the victim was nine years old. (2) We explained that this question could be interpreted as an inquiry
about the effect of the victim's age on three different matters: (1) guilt, (2) witness credibility, or (3)
punishment. (3) Inquiry into the third matter would constitute an attempt to obtain an impermissible
commitment. (4) In Sells v. State, defense counsel attempted to ask, among other things, whether the
prospective jurors "would want to know" the defendant's minimum parole eligibility. (5) We explained
that the question was ambiguous, because it could be intended to determine whether the prospective
juror would "foreclose honest consideration of the special issues" or "give . . . mitigating or
aggravating impact to the minimum parole eligibility requirement." (6) If given the latter interpretation,
the question would call for an improper commitment. (7) 

 We explained in Barajas that "[t]he trial court may, within its discretion, require that parties
phrase questions in a way that is precise enough to glean relevant information from the venire
member's answer." (8) And in Sells, we said that a trial court may prohibit "attempts . . . through
ambiguously worded questions, to commit the veniremembers to giving mitigating or aggravating
effect" to a particular fact. (9) We also held in Sells that a party could inquire into a prospective juror's
"general philosophical outlook on the justice system (such as whether [] retribution, deterrence, or
rehabilitation is the prime goal of the criminal justice system)." (10) But a party cannot ask even an
open-ended question that seeks to set the parameters of a juror's decision-making, such as, "What
circumstances in your opinion warrant the imposition of the death penalty?" (11) Nor can a party ask
questions about whether a particular factor should be considered mitigating. (12) 

 The question in the present case does not explicitly ask the prospective jurors to say what
types of evidence would be given mitigating or aggravating value in their punishment deliberations
in the case at hand. But the question is not precise enough to limit the prospective jurors' answers
to matters of general punishment philosophy. What are "factors," and what does it mean to say that
they are "important?" The Court says that defense counsel's question "sought to discover which
factors would be important to jurors' decisions, without inquiring how those factors would influence
the decision." (13) This reasoning is similar to our conclusion in Standefer about the question in Nunfio
v. State (14) on whether a prospective juror could be fair and impartial if the victim is a nun. There, we
said "[a] juror could be 'fair' and still take into account the victim's status as a nun where that status
is logically relevant to the issue at trial or fail to do so if the juror perceived that the victim's status
as a nun should not be controlling." (15) Nevertheless, we later overruled Nunfio in Barajas on the
basis that the question was ambiguous about what answers were to be elicited and constituted a
"global fishing expedition" that the trial court was within its discretion to prohibit. (16) 

 The question defense counsel sought to ask might have motivated the prospective jurors to
discuss whether the goal of sentencing is to punish, rehabilitate, or deter criminal behavior, but the
question might also have motivated them to discuss what types of evidence they consider to be
aggravating or mitigating, such as age or criminal history. This danger is especially apparent where,
as here, defense counsel sought to ask the prospective jurors about factors relevant to sentencing for
the specific offense on trial. Under the circumstances, the trial court was at least within its discretion
to prohibit the question as framed. If appellant really was seeking to elicit responses concerning the
prospective jurors' general punishment philosophies, he could have framed a question that was
precisely designed to achieve that purpose, and the trial court was within its discretion to require him
to do so. 

Filed: March 30, 2011

Publish
1. 93 S.W.3d 36 (Tex. Crim. App. 2002).
2. 93 S.W.3d at 37.
3. Id. at 39-40.
4. Id. at 40.
5. 121 S.W.3d 748, 755 (Tex. Crim. App. 2003).
6. Id. at 756-57.
7. Id. at 757.
8. 93 S.W.3d at 39.
9. 121 S.W.3d at 756.
10. Id. at 756 n.22.
11. See Standefer v. State 59 S.W.3d 177, 180 (Tex. Crim. App. 2001) (quoting Allridge v
State
, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)).
12. Davis v. State, 313 S.W.3d 317, 346 (Tex. Crim. App. 2010). 
13. Court's op. at 4.
14. 808 S.W.2d 482 (Tex. Crim. App. 1991).
15. Standefer, 59 S.W.2d at 180.
16. Barajas, 93 S.W.3d at 39-42.