**Opinion filed December 31, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00360-CR
_____

## HECTOR MANUEL GONZALEZ, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 13447**

### M E M O R A N D U M   O P I N I O N

The jury convicted Hector Manuel Gonzalez, Jr. of three counts of aggravated sexual assault of a child and assessed punishment as to each count at confinement for thirty years and a fine of $10,000. The trial court sentenced Appellant accordingly and ordered that the sentences were to run concurrently. Appellant contends in five issues that he is entitled to a new trial because of

improper comments and improper commitment questions during voir dire and because he received ineffective assistance of counsel.  We modify each of the three judgments and affirm as modified.

Appellant was charged by indictment with four counts of aggravated sexual assault of a child.  *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2014).  The allegations as to counts one, two, and four contain references to different dates for each allegation of aggravated sexual assault: the offense in count one occurred on or about March 1, 2010; the offense in count two occurred on or about June 30, 2010; and the offense in count four occurred on or about November 24, 2010.  In count three, the State alleged that Appellant intentionally or knowingly caused his mouth to contact the sexual organ of the victim, a child under the age of fourteen.

Teri, the victim's mother, testified as an outcry witness in this case.  Teri is married to Eddie, and Eddie's daughter Amanda is the mother of Appellant's two children.  Amanda and Appellant began living together in July 2008 but were never formally married.  The context of the conversation during which the victim made the outcry is not exactly clear, but Teri was discussing a recent situation involving the victim when the victim told her about the assaults.  Teri was telling the victim that, "if something happened to you, I cannot help you if I'm not aware of what's going on," and tears were "rolling down" the victim's face.  "[K]nowing that [she] must have hit a nerve," Teri testified that she continued telling the victim to open up and talk to her if something was wrong.  The victim told Teri that "JR touched [her]."  The family called Appellant "JR."  Teri told the victim to write down what had happened in her own words.

Teri and Eddie told Amanda about the victim's claims against Appellant, and then Teri and Eddie confronted Appellant in Amanda's presence.  Teri testified that Appellant did not make eye contact, express any emotion, or directly deny the

2

accusations.  According to Teri, Appellant said that he wrestled with the victim and the other girls.  Teri admitted that she had not given much thought to Appellant wrestling with the girls when she had observed this in the past.  Teri testified, however, about times when the victim would not want to go to family events after learning that Appellant would be there, but Teri said that the victim would only say that "the guys" picked on her and never mentioned anything about Appellant specifically.

The victim was fifteen years old at the time of trial.  She testified about two assaults that occurred at her home and two assaults that occurred when she stayed overnight at Appellant's house.  The victim stayed overnight at Appellant's home when Appellant's nieces, B.J. and S.J., who were similar in age to the victim, came to visit.  On one occasion in March 2010, the girls rented a movie and stayed awake until 5 a.m.  The victim and B.J. slept on a mattress in the living room, and S.J. slept on the couch.  The victim awoke around 8 a.m., and Appellant had his fingers inside her vagina.  The victim testified that she was scared, nervous, and shocked.  She said that Appellant eventually just left the living room and went back to his bedroom.  B.J. and S.J. slept through the assault.  The victim testified that she did not cry out during the assault because she was afraid, and she also said that she did not "want anyone to know."

The second and third assaults occurred at the victim's home where she lived with Teri and Eddie.  Teri's mother, who was in a wheelchair, lived with them, and Teri took care of her mother full time.  The second assault occurred in the victim's bedroom.  According to the victim, she was sitting on her bed, and when Appellant came into her room, they were talking normally until Appellant "stuck his finger in [her] vagina."  The victim testified that her grandmother was in her own bedroom at the time.  The victim said that she did not tell anyone because she was scared.  In August 2010, Appellant was helping move furniture at the victim's home

3

because the victim was changing bedrooms. The victim said that she took a break and was watching television when Appellant came into the living room and started watching television with her. The victim testified that Appellant "stuck his fingers in [her] vagina," pulled her pants down, and "licked [her] vagina." The victim did not cry out, but she tried to push Appellant away; Appellant did not stop.

The fourth assault occurred in November 2010. B.J. and S.J. invited the victim to spend the night at Appellant's house while they were in town visiting. The girls watched a movie, and all three girls slept in the same bed that night. Early the next morning before Appellant went to work, he came into the bedroom where the girls were sleeping, and the victim said that he again "stuck his fingers in [her] vagina." The victim did not cry out because she "didn't want anyone to hear."

It was a year later that the victim eventually told her mother about the assaults. At trial, the victim said, "The reason it took me so long to tell my mom is because I was just - - I didn't know how to explain it to her, and I didn't want to because I knew that if I did, then it would really mess things up in our family" and "would cause a lot of problems." The victim's blended family was very close and spent a lot of time together, including family dinners, church, and shopping. The victim testified that she tried not to tell her mother but that she "finally came out and told her." The victim said, "Going through this was a really hard thing for me. It put me under a lot of stress and caused a lot of family problems between my stepdad's new family." She said that "most of [Eddie's] family doesn't really like [her] anymore."

Appellant denied committing any of the assaults and maintained that it was difficult to explain what happened on specific occasions after more than a year and without specific details about when the alleged assaults occurred. Contrary to Teri's testimony, Appellant testified that he denied the assaults when Teri and

4

Eddie initially confronted him. Appellant said that he was never alone with the victim at her house because the victim's grandmother was always present and in the room, but Appellant admitted on cross-examination that there were times that the victim's grandmother was present but in another room. Amanda testified that the victim invited herself over every time B.J. and S.J. came to visit and that the victim was never alone with Appellant during those visits because Amanda was always present. Amanda admitted, however, that Appellant sometimes woke up for work earlier than she did, and she agreed that "the fact that [she was] physically in the house doesn't necessarily mean that [she was] present in the room where these events would have taken place."

In his second and third issues, Appellant complains of error that he alleges occurred during the questioning of prospective jurors. In Issue Two, Appellant argues that the prosecutor made an improper comment during voir dire when he told the panel that Dr. Matthews would testify and explain why some children delay in making an outcry statement. In Issue Three, Appellant contends that the trial court made a similar comment about Dr. Matthews during voir dire that was also improper.

We have reviewed a corrected reporter's record filed in this court after the case became at issue. From that review, it is apparent that the statement about which Appellant complains in his third issue was actually made by the prosecutor. Accordingly, we review Appellant's Issues Two and Three both as complaints of alleged improper comments made by the State during voir dire.

To preserve such an issue for review on appeal, a party must object to improper comments made by the State during voir dire. *See* TEX. R. APP. P. 33.1(a). Appellant did not object to either statement. Thus, the issue has not been preserved for our review. Issues Two and Three are overruled.

5

In his fourth issue, Appellant complains that the State was permitted to ask improper commitment questions during voir dire. Questions during voir dire are proper if the answers reveal a juror's view on an issue applicable to the case. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Because a trial court has broad discretion over the process of selecting a jury, an appellate court should not disturb a trial court's ruling made during voir dire absent an abuse of discretion. *Id.*

A party may not bind a potential juror to a verdict based on hypothetical facts. *Lydia v. State*, 109 S.W.3d 495, 497 (Tex. Crim. App. 2003). "[A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001). A commitment question is improper only when the law does not require such a commitment and when the question includes facts beyond those necessary to support a challenge for cause. *Id.* at 181–82. Thus, whether a party asked an improper commitment question is a two-step inquiry: (1) Is the question a commitment question, and if so, (2) Does the question lead to a valid challenge for cause and include only the facts necessary to determine whether a panelist is challengeable for cause? *Id.* at 182–83.

During voir dire, after it discussed delayed outcries, the State informed the venire panel that Dr. Matthews would "be able to enlighten you about why that takes place," and the following exchange occurred between the State and Veniremembers Norwood, Hooper, and Tucker:

> [PROSECUTOR]: Ms. Norwood, why would a child - - and sometimes a young child, sometimes an older child - - not say anything about something like this, about being sexually abused?
>
> VENIREPERSON NORWOOD: Fear or guilt.

6

[PROSECUTOR]: Okay. Fair enough. Do you think the idea that perhaps the victim feels some sort of loyalty or love toward the person who did this to them, could that play into it?

VENIREPERSON NORWOOD: Yes.

[PROSECUTOR]: Mr. Hooper, do you think the fact that, you know, maybe they're just flat scared might play into it?

VENIREPERSON HOOPER: Yeah. Sometimes, yes.

[PROSECUTOR]: Mr. Tucker, do you think perhaps the fact that the victim is just afraid she won't be believed might play into it?

VENIREPERSON TUCKER: Yes, sir.

Appellant did not object to any of the questions that he now claims are improper commitment questions. Therefore, Appellant failed to preserve this issue for our review. However, even if preserved, we must conclude that Appellant's contention fails on the first prong of the inquiry because these are not commitment questions. Because the State did not ask the veniremembers to commit to a verdict or to refrain from resolving an issue, the trial court did not err when it permitted the State to question the members of the venire about reasons for delayed outcries. Appellant's fourth issue is overruled.

In his first and fifth issues, Appellant argues that his trial counsel was ineffective because he failed to (1) call Appellant's nieces to testify, (2) object to the prosecutor's improper comments during voir dire, and (3) object to improper commitment questions during voir dire. The United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to counsel means more than simply having a lawyer present; it requires the right to

7

effective assistance. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A defendant does not have a right to errorless counsel but, rather, to objectively reasonable representation. *Id.* We review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

To determine whether Appellant's trial counsel rendered ineffective assistance at trial, we look at whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, whether Appellant has shown that there is a reasonable probability that the result would have been different but for trial counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). There is a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel's deficiency must be affirmatively demonstrated in the record because the court must not engage in retrospective speculation. *Id.*

"It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. However, we cannot assume that conduct was based on strategy if "the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

We first address Appellant's contention that counsel was ineffective for failing to call Appellant's two nieces to testify. Appellant's appellate attorney filed a motion for new trial and attached the affidavits from Appellant's two nieces who were willing to testify on his behalf. The assertions in the affidavits are identical

8

except for the names, and each niece represented that she would have testified that they spent time in Appellant's home in 2010; that the victim slept between them in the living room when all three girls were there; that the victim never told them about the abuse; and that, during the weekend visits, Appellant never woke up any of the girls and never touched the victim. Both nieces asserted that they were never called to testify.

The State argues that Appellant has failed to show that trial counsel's decision not to call the witnesses was not sound trial strategy because the affidavits "amount to nothing." According to the State, "the assumption is that such testimony would have turned the tide in the Appellant's favor when such is not demonstrated in the record."

Whether to present a witness is a decision that is largely a matter of trial strategy. *Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.—Houston [1st Dist.] 1994 pet. ref'd). The failure to uncover and present mitigating evidence, however, cannot be justified as a tactical decision when defense counsel has failed to seek out and interview potential witnesses. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (focusing not on whether performance was deficient by failing to present mitigating evidence but rather on the adequacy of the investigation that informed the decision not to present evidence); *Rivera v. State*, 123 S.W.3d 21, 30–31 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

There is nothing in the record to indicate that counsel failed to investigate or that counsel was not aware of these potential witnesses. Moreover, the facts alleged in their affidavits, in large part, were consistent with the victim's testimony, and it would be reasonable to conclude that their testimony would not have added anything to Appellant's case. The allegations that the victim never told Appellant's nieces about the abuse, never told them "to be on the lookout" for Appellant, and never told them that Appellant woke up the victim from her sleep

9

are not different than the evidence that is in the record because the victim testified that she never told the girls about the abuse. Similarly, the victim testified that all three girls slept together when they had sleepovers, and both Amanda and Appellant testified that Appellant was not alone with the victim at the time of the incidents. The remaining allegations include statements that could not be within the personal knowledge of the witnesses—for example, Appellant "never woke any of us up and never touched [the victim] during any of these weekends"; the victim "never cried out that [Appellant] was touching her"; and "[n]othing bad happened to [the victim] all those weekends in 2010 when my sister and I were there with [the victim]." After reviewing the entire record and comparing the evidence that Appellant claims his trial counsel should have offered, we cannot hold that counsel could not have had a plausible trial strategy that would support his decision not to call Appellant's nieces to testify. *See Garcia*, 57 S.W.3d at 440.

We next assess Appellant's contention that counsel was ineffective because he failed to object during voir dire to the statements and questions complained of in Issues Two, Three, and Four. Having concluded in Issue Four that the complained-of questions were not improper commitment questions, we cannot conclude that counsel was ineffective for not objecting.

Appellant also contends that counsel should have objected to the State's comments during voir dire, which were challenged in Issues Two and Three, that Dr. Matthews would be available to enlighten the jury on the issue of why delayed outcry statements occur. Appellant argues that the statements were objectionable because "neither the State, nor the defense, is entitled to go into the testimony of specific witnesses." Assuming without deciding that the prosecutor's statements were objectionable, Appellant has not made any showing as to how he was prejudiced by counsel's failure to object. Appellant has failed to show a reasonable probability that the result of this proceeding would have been different

10

had trial counsel objected to the prosecutor's statements during voir dire. *See Thompson*, 9 S.W.3d at 813.

After reviewing Appellant's claims and reviewing the record, we conclude that Appellant has failed to show that he received ineffective assistance of counsel at trial. Trial counsel conducted voir dire; successfully challenged the testimony of Dr. Matthews, which was excluded because the State failed to provide the requisite notice; effectively cross-examined witnesses; made appropriate objections during trial; and made opening statements and closing arguments to the jury. Because Appellant has failed to show that his trial counsel's performance was deficient and that there is a reasonable probability that the result of the proceedings would have been different, we overrule Appellant's first and fifth issues.

Appellant was found guilty of the offenses alleged in counts one, two, and four, but the judgments reflect convictions for counts one, three, and four. On our own motion under the authority provided in Rule 43.2(b) of the Texas Rules of Appellate Procedure, we modify the judgments to accurately reflect the sentences pronounced by the trial court. We modify the judgment of conviction in count two to reflect that the conviction is for count two rather than count three. Additionally, we modify the judgment in count one to reflect that the sentence in count one is to run concurrently with the sentences in counts two and four. Further, we modify the judgment in count four to reflect that the sentence in count four is to run concurrently with the sentences in counts one and two. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

As modified, we affirm the judgments of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

December 31, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.