**Affirmed as Modified and Majority Opinion filed February 14, 2023.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-21-00658-CR**

---

**ANTONIO JULIO HERNANDEZ-FACED, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1525859**

---

## MAJORITY OPINION

A jury convicted appellant Julio Hernandez-Faced of murdering the complainant, Roberto Bermudez. *See* Tex. Penal Code § 19.02. The trial court sentenced appellant to life in prison and a $10,000 fine. Appellant appeals his conviction in two issues. In his first issue appellant argues the trial court improperly limited his voir dire. We overrule appellant's first issue because he has not established that the trial court abused its discretion when it restricted his voir dire. In his second issue appellant asserts the trial court waived all costs and fines

by allegedly applying jail time served "toward incarceration, fine, and costs" in the judgment of conviction. We overrule appellant's second issue because he has not demonstrated that the trial court intentionally waived all costs and fines through this notation. We modify the trial court's judgment of conviction to reflect the $10,000 fine assessed during the oral sentencing hearing and affirm the trial court's judgment as modified.

## BACKGROUND[1]

The complainant, Roberto Bermudez, and his family went to his mother-in-law's home to help her repair a sink. The complainant and his wife were working on the sink when appellant entered the home and encountered the complainant's mother-in-law. The mother-in-law asked appellant "what are you doing here?" The complainant and his wife stopped working on the sink and moved toward where appellant was walking around the house. Appellant approached the complainant and asked him: "do you want to kill Luis?"[2] The complainant asked appellant "What are you talking about?" While the complainant was talking to appellant, appellant pulled a gun out of his waistband and, after a brief struggle over the gun, shot the complainant to death. The struggle resumed as Luis joined the fight, preventing appellant from escaping. The fight was finally stopped by arriving firefighters. Appellant was arrested when police arrived at the scene. Appellant was indicted for murder.

Appellant's case was eventually called for a jury trial. During voir dire the trial judge instructed the venire panel that the State was required to prove each

---

[1] Because appellant has not challenged the sufficiency of the evidence supporting his conviction, we include only those facts necessary to provide background for his issues raised in this appeal.

[2] Luis was the complainant's brother-in-law who lived in a separate part of his mother's home.

element of the charged offense. The trial judge continued that the burden of proof never shifts to the defendant. The trial judge also stated that the defendant "is presumed to be innocent unless guilt is established by legal evidence received before the jury in this case beyond a reasonable doubt." The judge informed the venire panel that the State was not required to prove its case "beyond all possible doubt." The judge then explained that there is no legal definition for the beyond a reasonable doubt burden of proof. The judge compared the beyond a reasonable doubt standard to the burdens of proof used in civil trials, stating that "the highest standard that we have in our Court system is beyond a reasonable doubt." The trial judge continued that even though there is no legal definition for beyond a reasonable doubt, "jury members don't get to make up a definition. What it means is what the words mean, beyond a reasonable doubt. The common usage of those words, the common definition of those words, that's what it means. It means simply a doubt based on reason." The trial judge then asked the venire panel as a whole:

> If you are selected to serve on this jury, can you follow the law? Can you take an oath to follow the law that you will not return a verdict of guilty unless the State has met its burden and - - beyond a reasonable doubt? If you cannot hold the State to that standard, please raise your hand. All right. Thank you.

The prosecution also discussed the beyond a reasonable doubt burden of proof during its portion of the voir dire. The prosecutor informed the venire panel that the State must prove its case against appellant beyond a reasonable doubt. The prosecutor continued that "beyond a reasonable doubt is the burden - - it's a burden that we gladly accept, and we meet that burden in this courthouse every day. It's not proof beyond a shadow of a doubt. It's not proof beyond all doubt. It's proof beyond a reasonable doubt." The prosecutor then asked two potential jurors

3

individually about their interpretation of two PowerPoint slides with different amounts of puzzle pieces. The first potential juror could not tell what picture the pieces formed. The second, however, could tell the picture shown in the puzzle beyond a reasonable doubt, even though some pieces were missing. The prosecutor used that example to explain the difference between beyond a reasonable doubt and beyond all doubt. The prosecutor then asked "who's going to raise my burden? Who's going to say, '[i]f you don't prove this case beyond all doubt, I cannot convict him of murder.'" She then went row by row asking their responses to that question. The record does not indicate whether any members of the venire panel responded affirmatively to the question. Finally, the prosecutor discussed defenses and she reiterated that the burden of proof always remained with the State and that the State was required to prove its case against appellant beyond a reasonable doubt.

Appellant's defense counsel then had an opportunity to question the venire panel. He began by stating

> that the good thing about going last is that a lot of the topics have already been covered either by the Judge or by the State in the voir dire. I have a lot of similar questions, maybe worded a little differently. I might want to touch on some of the same subject matter that's already been talked about, but just bear with me.

Appellant's counsel continued that there are two general principles governing every criminal case. After covering the first principle, the presumption of innocence, he began discussing the second, the State's burden to prove its case beyond a reasonable doubt. Appellant's counsel then asked the venire panel whether they all agreed with this principle. At least one potential juror answered "yes." Appellant's counsel continued by asking the venire panel if "anybody [has] a problem with - - with those? So far, nothing? Okay."

4

Appellant's counsel then revisited the State's beyond a reasonable doubt burden of proof while discussing the requirement that the State prove the offense was committed either intentionally or knowingly beyond a reasonable doubt. Appellant's counsel then asked the panel generally if they understood. At least one member of the panel answered "yes." Appellant's counsel then followed up by asking if "[a]nybody [was] confused? Nobody? Okay."

Appellant's counsel, after observing that "the State [had] talked about this already[,]" asked the venire panel what elements had to be proven beyond a reasonable doubt. He then told the venire panel that every element of the charged crime must be proven beyond a reasonable doubt. Appellant's counsel then reiterated that the defense has no burden, that "all of the responsibility to prove whether this happened or not, whether the offense was committed is entirely on the State of Texas." This segued to rhetorically asking "so, what is the burden on the State of Texas? We've discussed beyond a reasonable doubt. The State put on that puzzle that they put on up there. So, to help you understand it other than the puzzle, which is a really good example, okay, I have a chart here." The chart depicted Texas's different burdens of proof and, while describing them, appellant's counsel paused to ask if "[e]verybody follow[ed] that?"

After acknowledging the State's prior point that the jurors were not eyewitnesses, appellant's counsel stated that "somewhere below eyewitness is going to be you, the juror. And you got to consider whether the State has proven their case beyond a reasonable doubt. Where does that fall on this graph here? Well, it is somewhere below being an eyewitness. There's no set definition the State of Texas has. They pretty much leave it up to you." Appellant's counsel then contrasted the preponderance and clear-and-convincing evidentiary standards with the chart's depiction of beyond a reasonable doubt, which he stated is

somewhere above clear and convincing, "somewhere in this range, then up at the very top, near the very top is beyond a reasonable doubt. Can everybody see that? Can everybody follow the different burdens of proof that we have?" Appellant's counsel then reiterated that the State's burden of proof was beyond a reasonable doubt, a very high burden, "because a person's liberty interest is at stake."

Appellant's counsel then discussed with the venire panel the meaning of "guilty" and "not guilty." While appellant's counsel stated that "guilty" meant "the State proved all of the elements of the offense beyond a reasonable doubt[,]" he asked what "not guilty" meant. When a potential juror defined "not guilty" as "[t]hey didn't prove one or more" elements, appellant's counsel stated "exactly." He then explained "that the State didn't prove one or more of the elements of the offense. That they - - they didn't prove it. They didn't prove it beyond a reasonable doubt." He then asked "how many people are going to have a problem with that?" One potential juror responded positively.

At this point, appellant's counsel said he was winding down his voir dire but then announced he was going to ask some more questions.

| | |
|---|---|
| Appellant's counsel: | I'm going to go by row and ask you to give me a number between one and seven. Okay? |
| | I'm going to ask you a question and you're going to give me a number between one and seven. One means you strongly agree with my statement, and seven means you strongly disagree with my statement. You could fall somewhere in the middle, two, three, four, five, six. Okay? One and seven are the two extreme ones. |
| | Okay. For the first row, how would you answer this question, "I would not require proof beyond a reasonable doubt to |

6

|  |  |
|---|---|
|  | convict"? |
|  | Juror No. 1? |
| Prospective Juror: | Seven. |
| Appellant's counsel: | Number 2? |
| Prospective Juror: | I don't understand. |
| Appellant's counsel: | Okay. I would not – this is you talking. Okay? I would not require proof beyond a reasonable doubt to convict. |
| Prospective Juror: | I'm sorry. I've not - - I'm confused. |
| Trial Court: | Counsel. Mr. Benavides, Ms. Abner. |
| *(At the Bench)* |  |
| Trial Court: | I've asked that - - them about reasonable doubt. She's asked them about reasonable doubt. Let's move on. |

*(Discussion at the Bench was concluded)*

Appellant's counsel stepped back from the bench and then moved on to another topic with the venire panel. After asking several more questions, appellant's counsel completed his voir dire. The parties agreed on challenges for cause and then made their respective peremptory strikes. Neither side objected to the petit jury as constituted. The case then went to trial before the selected jury, which found appellant guilty of murder. The trial court then sentenced appellant to serve life in prison and a $10,000 fine on April 16, 2019. This appeal followed.[3]

## ANALYSIS

**I.      The trial court did not abuse its discretion when it told appellant's counsel to move on to different questions during voir dire.**

---

[3] Appellant was granted an out-of-time appeal by the Court of Criminal Appeals due to his trial counsel failing to file a timely notice of appeal.

The trial court has broad discretion over the process of selecting a jury. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). We review the trial court's decision to limit voir dire under an abuse of discretion standard. *Id.* The trial court abuses its discretion during voir dire "only when a proper question about a proper area of inquiry is prohibited." *Id.* "A question is proper if it seeks to discover a juror's views on an issue applicable to the case." *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012) (quoting *Sells v. State*, 121 S.W.3d 748, 756 (Tex. Crim. App. 2003)).

The trial court's broad discretion over voir dire extends to the topics that will be addressed during voir dire as well as the form and substance of the questions employed to address those topics. *Jacobs v. State*, 560 S.W.3d 205, 210 (Tex. Crim. App. 2018). The main reason for this broad discretion is that voir dire could go on forever without reasonable limits. *Barajas*, 93 S.W.3d at 38. Thus, a trial court may impose reasonable restrictions on the exercise of voir dire examination. *Mason v. State*, 116 S.W.3d 248, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Boyd v. State*, 811 S.W.2d 105, 116 (Tex. Crim. App. 1991)). This discretion extends to restricting voir dire questions that are confusing, misleading, vague, overbroad, or are improper commitment questions. *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012). A trial court may also limit voir dire questions that are duplicative or repetitious. *Dinkins v. State*, 894 S.W.3d 330, 345 (Tex. Crim. App. 1995). Constitutional limitations on this broad discretion are "notably rare" and include topics such as racial prejudice, widespread and provocative pretrial publicity, and certain topics applicable in capital-punishment cases. *Jacobs*, 560 S.W.3d at 210.

As detailed above, the trial court, the State, and then appellant's counsel had discussed the State's beyond a reasonable doubt burden of proof. Indeed,

appellant's counsel addressed the topic multiple times without limitation by the trial court. In addition, appellant's counsel had told the jury that he believed the State's puzzle example was a particularly good explanation of the State's beyond a reasonable doubt burden of proof. It was only when appellant's counsel asked the scaled question regarding the venire panel's attitude toward the State's burden of proof and at least one of the first potential jurors to be asked the question expressed confusion, that the trial court intervened and asked appellant's counsel to move on. The trial court could have, within its discretion, concluded that the scaled question was confusing and overly vague. *See Hernandez*, 390 S.W.3d at 315. It could also have decided, within its discretion, that the potential jurors' attitudes toward the State's burden of proof had been adequately explored through previous voir dire questions and the scaled question was unnecessarily repetitive as a result. *See Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988) ("There is no error in prohibiting duplicitous questions where the investigation into possibly proper or fruitful matters is not entirely prevented."); *Barrett v. State*, 516 S.W.2d 181, 182 (Tex. Crim. App. 1974) ("Appellant was neither effectively denied an opportunity to examine the panel nor unfairly prohibited from conducting his inquiry. Counsel has a duty, within reasonable bounds, to budget his time. The trial court may, within reason, limit voir dire examination in order to avoid undue and unnecessary prolongation of the trial."). Because the trial court acted within its discretion when it limited appellant's voir dire, we overrule appellant's first issue on appeal.[4]

## II. The trial court did not waive all costs and fines in the judgment of conviction.

At the conclusion of appellant's sentencing hearing, the trial court sentenced

---

[4] Because we have determined that the trial court did not abuse its discretion when it limited appellant's voir dire, we need not address the harm arguments made in appellant's opening and reply briefs.

appellant to life in prison and assessed a $10,000 fine. The trial court then stated: "[y]our sentence will commence this day, and you will receive credit for any time periods of detention as provided by law." The written Judgment of Conviction by Jury provides the following:

- Fine: $ N/A

- Court Costs: $ as assessed

- Total Jail Time Credit: 955 DAYS

- If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.
  N/A DAYS NOTES: TOWARD INCARCERATION, FINE, AND COSTS

The record on appeal also includes the Criminal Bill of Costs assessed against appellant. The total amount of the costs assessed against appellant is $1,214. Based on the written Judgment of Conviction by a Jury, appellant asserts, in his second issue, that the trial court waived all costs and fines assessed against him.

In support of his waiver argument, appellant cites only article 43.09(b) of the Code of Criminal Procedure, which provides:

(b) In its discretion, the court may order that for each day's confinement served by a defendant under this article, the defendant receive credit toward payment of the pecuniary fine and credit toward payment of costs adjudged against the defendant. Additionally, the court may order that the defendant receive credit under this article for each day's confinement served by the defendant as punishment for the offense.

Then, assuming he should be credited the same $100 daily amount statutorily provided for some persons convicted of misdemeanors serving their sentence in a county jail, appellant argues that the credit for the 955 days he had served in jail

10

would erase his entire $10,000 fine and the assessed court costs.[5]

We disagree with appellant's argument because nothing in the record establishes an intent by the trial court to waive appellant's fine or the assessed costs. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) ("Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."); *Armstrong*, 340 S.W.3d at 765 ("An issue does not cease to be a criminal law matter merely because elements of civil law must be addressed to resolve the issue."). As pointed out above, the trial court orally pronounced a $10,000 fine assessed against appellant. Further, the fact the cost bill does not reflect the fine imposed by the trial court does not establish that the fine was waived. *See Brumfield v. State*, 641 S.W.3d 568, 583 (Tex. App.—Tyler 2022, pet. ref'd) (deleting fine from bill of costs because "[f]ines constitute punishment and are part of the defendant's sentence, whereas court costs are those financial obligations intended to recoup the costs of judicial resources expended in connection with the trial of the case.") (internal quotation marks omitted). To the extent the written judgment varies from the oral pronouncement of sentence and fine, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). Because the written judgment of conviction does not reflect the oral pronouncement of a $10,000 fine, we agree with the State that we must modify the judgment to include the assessment of a $10,000 fine against appellant. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (stating appellate court has authority to modify a judgment to "speak the truth").

Turning to the court costs assessed against appellant, we likewise conclude

---

[5] *See* Tex. Code Crim. Proc. art. 43.09(a) (providing in specified circumstances a $100 credit per day served in a county jail).

that appellant has not pointed to anything in the record establishing an intent by the trial court to waive the assessed court costs. Court costs are not punitive, so they need not be pronounced in open court during the sentencing hearing. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011); *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009). They also need not be proven during the trial. *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Additionally, court costs need not be incorporated by reference in the written judgment. *See Armstrong*, 340 S.W.3d at 767 ("Court costs, as reflected in a certified bill of costs, need neither be orally pronounced nor incorporated by reference in the judgment to be effective."). Instead, court costs are payable by the person charged with the cost when a written cost bill is "provided to the person charged with the cost." Tex. Code Crim. Proc. art. 103.001(b). Here, appellant's brief establishes that he was provided with the bill of cost because he references the total amount charged in his opening brief and cites the page in the Clerk's Record where it can be found. As a result, the costs are payable by appellant. *See id.*; *Bonds v. State*, 503 S.W.3d 622, 624 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (rejecting defendant's request to enjoin the Texas Department of Criminal Justice from collecting court costs from his inmate account "because appellant has seen and examined the bill of costs"). Therefore, we reject appellant's contention that the trial court waived the assessment of costs.

Appellant alternatively argues that if this court does not accept his waiver argument, we should remand to the trial court for an ability to pay hearing conducted on the record. We disagree.

Appellant admits that the judgment of conviction recites that the trial court ordered appellant to pay the assessed fine and court costs only "after having conducted an inquiry into [appellant's] ability to pay." Appellant initially

discounts this recital as mere "boiler plate." Appellant then, citing the current version of article 42.15(a-1) of the Code of Criminal Procedure, argues we must remand for an ability to pay hearing on the record. *See* Tex. Code Crim. Proc. art. 42.15(a-1) (providing that "a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs"). Appellant, recognizing that the requirement to conduct an ability to pay hearing on the record only took effect on September 1, 2021, points to Section 5 of the enacting bill, Senate Bill 1373, in support of his argument that we must remand for an ability to pay hearing on the record. Acts 2021, 87th Leg., ch. 106 (S.B. 1373), § 1, eff. Sept. 1, 2021. Section 5 provides that "[t]he changes in law made by this Act apply to a fine, fee, or cost imposed before, on, or after the effective date of this Act." *Id.* According to appellant, Section 5 means that the 2021 change to article 42.15(a-1) retroactively rendered void the trial court's off-the-record assessment of his ability to pay the fine and costs assessed against him.

The plain language of the 2021 amendment establishes that appellant's reading of the amendment is incorrect. *See Bonds*, 503 S.W.3d at 624 ("To determine the collective intent of the Legislature, we look first to the literal text."). Based on the plain language of the amendment, the changes to article 42.15(a-1) retroactively applied only to fines, fees, and costs, not the hearing requirement. Accepting appellant's interpretation would lead to the absurd result that all prior judgments of conviction imposing fines, costs, or fees on a defendant without a hearing on the record would be subject to being declared invalid. If the Legislature intended such far-reaching effects, it could have included "hearings" in Section 5. Because it did not, we reject appellant's proffered interpretation.

"Recitals contained in a judgment create a presumption of regularity and truthfulness, absent an affirmative showing to the contrary." *Wiggins v. State*, 622

S.W.3d 556, 561 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). The Judgment of Conviction by a Jury in appellant's case recites that the trial court imposed the fine and court costs after conducting an inquiry into appellant's ability to pay. Appellant has made no attempt to affirmatively show that this recital is incorrect. As a result, the presumption that the recital is correct controls. Because there was no statutory requirement for an on-the-record ability to pay hearing when appellant was sentenced and the record reflects that the trial court conducted the mandated inquiry into appellant's ability to pay before assessing a fine and court costs against appellant, we reject appellant's request that we remand to the trial court for an ability to pay hearing on the record.

Having addressed and rejected the arguments raised in appellant's second issue, we overrule that issue.

## CONCLUSION

We modify the trial court's Judgment of Conviction by a Jury to add the $10,000 fine imposed during the oral sentencing hearing. We overrule appellant's issues on appeal and affirm the trial court's judgment as modified.


/s/     Jerry Zimmerer
          Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer (Bourliot, J., concurring without opinion).

Publish — TEX. R. APP. P. 47.2(b).

14